## BEEBE *vs.* HUTTON.

Under the act of congress passed June 30, 1864, "To provide internal revenue to support the government," &c. which enacts that any person who shall make, sign or issue any instrument, document or paper, or shall accept or pay any commercial paper, without the same being duly stamped, or having thereon an adhesive stamp to denote the duty chargeable thereon, *with intent to evade the provisions of that act,* shall forfeit the sum of $200, and such instrument, &c. shall be deemed invalid and of no effect, the penalty is not incurred unless the neglect duly to stamp be willful and fraudulent; nor is the instrument invalidated, unless the omission to affix a stamp be "with intent to evade the provisions" of the act; in other words, to defraud the government of the stamp duty, in whole or in part.

It is "*such*" instrument, to wit, one that has been attempted to be put in circulation by a fraudulent non-compliance with the terms of the act, which is to be deemed invalid and of no effect, and not one which, through haste or inadvertence, or ignorance, has been mistakenly though honestly issued without a compliance with the law.

When the question arises in a court of justice, and the point is distinctly presented, whether an instrument defectively stamped without any intent to evade the provisions of the revenue law, may be read in evidence upon proof of those facts, accompanied by a distinct offer to comply with the provisions of that act, and an actual compliance therewith, the act of congress has not declared the instrument void; and it is receivable in evidence.

Beebe *v.* Hutton.

By the 39th section of the internal revenue law, which provides that in case of the sickness or temporary disability of a collector to discharge such of his duties as can not, under existing laws, be discharged by a deputy, they may be devolved by him upon one of his deputies, the duty of affixing a stamp to an instrument when produced in court, and remitting the penalty, in the contingency mentioned in the statute, was designed to be confided to the *collector*, *in person;* and he can not devolve it upon a *deputy*, except in the event of sickness or temporary disability.

Where a chattel mortgage, upon being offered in evidence, is objected to, on the ground of its having a defective stamp, it is competent for the party offering the instrument to show that the insufficiency of the stamp arose from inadvertence or mistake, and without any intent to evade the provisions of the revenue law, and thereupon to read the mortgage in evidence.

EXCEPTIONS ordered to be heard, in the first instance, at the general term. The action was tried before Justice MILLER and a jury, at the Schoharie circuit, in October, 1865. The complaint was for taking and converting a mare and colt, 24 head of horned cattle, and 54 sheep. The answer justified the taking and sale of the property, under a chattel mortgage, executed by the plaintiff to Philip Pruyn, (under whom the defendant acted,) and bearing date the 2d day of November, 1864.

On the trial the plaintiff was allowed to prove, as a measure of damages, the advance in value of the cattle at any time between the conversion and the trial, and proved such advance to be 33 per cent. The defendant excepted. The chattel mortgage having been proved by the subscribing witness, was offered in evidence, but excluded, on the ground that it was not properly stamped. Various offers and rulings in connection therewith, and exceptions to such rulings, were made, at the trial, which are sufficiently stated in the opinion of the court.

The plaintiff recovered $1300 damages.

*J. M. Donaldson* and *H. Smith,* for the plaintiff.

*J. H. Salisbury* and *A. J. Parker,* for the defendant.

Beebe *v.* Hutton.

HOGEBOOM, J. The defendant justified the taking of the plaintiff's property under a chattel mortgage which, in a certain contingency, conferred the authority to do so. This mortgage was dated the 2d day of November, 1864; for although the date is not given, in the case, it is in the pleadings, and we may assume, as no objection of discrepancy was made, that they corresponded. This mortgage having been duly proven, was offered in evidence, and rejected on account of its having a defective stamp. To this decision the defendant excepted. The defendant then offered to prove that the insufficiency of the stamp occurred by inadvertence or mistake, and without any intent to evade the provisions of the revenue laws. This proof was rejected, and the defendant excepted. The defendant then proposed to put on the requisite stamp and read the mortgage in evidence. This was refused, and the defendant again excepted. The defendant then offered the mortgage in evidence, with, the requisite amount of revenue stamps to be affixed or placed thereon by the deputy collector, and by him to be indorsed and approved. This was objected to, as before, and also upon the ground of a want of authority in the deputy collector to perform this act, which could only be done by the collector himself. The objection was sustained, and the defendant excepted. The defendant then offered to prove that the subscribing witness to the mortgage was the agent both of the mortgagor and of the mortgagee, for the purpose of drawing and stamping the same ; that he placed thereon an insufficient stamp (of ten cents) supposing the same to be sufficient, and without any intent to defraud the government of revenue. And the defendant further proposed that such agent should then duly stamp the same, and thereafter the same be read in evidence. This was also, on objection, refused, and the defendant again excepted. Finally, the defendant offered to read the said mortgage in evidence, (the same having been duly proved,) on the ground that the act of congress, so far as it attempts to invalidate the contract for the want of a suffi-

cient stamp, was unconstitutional and void ; the same being valid by the laws of the state. The plaintiff objected, on the ground that the mortgage was void for the want of a sufficient stamp. The court sustained the objection, and excluded the mortgage, and the defendant excepted. The most material portion of the defendant's evidence was thus ruled out, and the propriety of its exclusion is the important question in the case. As this question is likely frequently to arise, it is desirable to examine the point with care. To do so it will be necessary to recur to the course of legislation on the subject.

This legislation commenced in 1862 ; and in the 95th section of the act passed on the 1st of July, 1862, entitled " An act to provide internal revenue to support the government and to pay interest on the public debt," and taking effect, as to stamp duties, on the 1st of October, 1862, (*see sec.* 94,) it is enacted "that if any person or persons shall make, sign or issue, or cause to be made, signed or issued, any instrument, document, or paper of any kind or description whatsoever, without the same being duly stamped for denoting the duty hereby imposed thereon, (in section 94,) or without having thereupon an adhesive stamp to denote said duties, such person or persons shall incur a penalty of fifty dollars, and such instrument, document or paper as aforesaid shall be deemed invalid and of no effect."

As the schedule attached to the act, containing the rate of duties to be collected and paid, embraced written instruments of every description, including agreements and contracts, deeds and conveyances, leases and mortgages, all kinds of commercial paper and legal documents, including the writs and processes of the state courts, a question very soon arose, whether it was within the constitutional power of congress, in the exercise of its acknowledged authority to "lay and collect taxes, duties, imposts and excises," besides imposing the tax and providing means for its collection, to pronounce invalid and of no effect, all agreements between the citizens of

a particular state, valid by the common law and the statute law of such state, and the writs and process of the state courts employed to enforce legal remedies between such citizens. This question, if necessary, I shall hereafter discuss. For the present it will be convenient to trace the course of legislation in chronological order.

In 1863, the act appears to have been amended, but not in any particular touching the present question.

By the act of June 30, 1864, taking effect, in regard to stamp duties, August, 1864, a new schedule of stamp duties was introduced, in most respects similar to the schedule of 1862 ; and by section 173 of the act of 1864, the act of July 1, 1862, was wholly repealed, except the 115th and 119th sections thereof, which have no relation to this question. So that on and after the 1st of August, 1864, there was no act in force in regard to stamp duties, except the act of June 30, 1864. It is unnecessary, therefore, further to consider the effect of the 94th and 95th sections of the act of 1862, as they were repealed by the act of 1864. The 158th section of the latter act (1864) is as follows :

"Sec. 158. And be it further enacted, that any person or persons who shall make, sign or issue, or who shall cause to be made, signed or issued, any instrument, document or paper of any kind or description whatsoever, or shall accept or pay, or cause to be accepted or paid, any bill of exchange, draft or order, or promissory note, for the payment of money, without the same being duly stamped, or having thereupon an adhesive stamp for denoting the duty chargeable thereon, with intent to evade the provisions of this act, shall for every such offense, forfeit the sum of two hundred dollars, and such instrument, document or paper, bill, draft, order or note, shall be deemed invalid and of no effect."

This section is a substitute for section 95 of the act of 1862, and takes its place. It will be seen that it differs from the act of 1862 in three particulars. 1. It imposes an increased penalty, to wit, $200, instead of $50. 2. It ex-

tends the penalty to the *acceptance* and *payment* of commercial paper insufficiently stamped, as well as to the *making* and *issuing* of the instruments specified in the act of 1862. 3. It introduces the qualification in regard to the omission to have the paper duly stamped, that it be "with intent to evade the provisions of this act." This qualification I regard as of great significance, and applicable to all parts of the section abrogated. Not only is the penalty not incurred unless the neglect duly to stamp be willful and fraudulent, but the instrument is not designed to be invalidated unless the omission to stamp be "with intent to evade the provisions of the act;" in other words, to defraud the government of the stamp duty, in whole or in part. It would, I think, be a forced and unnatural construction of the act to contend that while the penalty was only incurred for a willful and fraudulent evasion of the stamp duty, the invalidation and forfeiture of the instrument—which might be, and in most cases probably would be, a more severe penalty—was to apply to every innocent and inadvertent, as well as intentional and fraudulent, omission to affix the proper revenue stamp. The whole section must be read together, and in continuity. The penalty designed to be imposed was a double one, to wit, a pecuniary fine, and the forfeiture of the instrument; but only in the event of an intentional evasion of the stamp duty. The law was *amended* in this particular, and made more truly to conform to the spirit and policy of the law, to wit, to collect revenue and to punish fraud. It is "*such*" instrument, to wit, one that has been attempted to be put in circulation by a fraudulent non-compliance with the terms of the act, which is to be deemed invalid and of no effect, and not one which through haste, or inadvertence or ignorance, has been mistakenly though honestly issued without a compliance with the law. It is said that unless the declaration of *invalidity* be held to apply to *all* instruments which fail to be properly stamped, whether through ignorance or willfulness, fraud or mistake, the government is

Beebe *v.* Hutton.

inevitably deprived of the stamp duty in cases of alleged inadvertence or mistake, because the instrument may always be enforced between the parties, whether properly stamped or not. But this is not so. There is an omission both in the act of 1862 and in that of 1864 to declare, in definite and positive terms, all of the consequences which shall ensue from a neglect duly to stamp the instruments. referred to ; as that they shall not be used by the parties, or read in evidence, unless proper stamps are affixed. Indeed there is no direct and positive injunction that the amount of the duty shall be declared by a stamp, and that such stamp shall be affixed to the instrument. But the amount of the duty is expressly specified, and declared to be payable and collectable ; and it is fairly to be inferred that none of the specified instruments are to be read in evidence, or legally enforced against parties, until properly stamped ; indeed that the duties are collectable whenever an instrument, subject to stamp duty, comes into existence. I think no practical embarrassment can arise from this construction of the law, in regard to the mode of its enforcement. The instrument when not properly stamped, should be excluded as evidence until the proper stamps are affixed, either, 1. Because, being liable to stamp duty, it is not legally available to a party until the proper stamp is affixed ; or, 2, Because, appearing to be without a proper stamp, and knowledge of the law being presumed, it may be that an intent to violate the law would be a just presumption, requiring affirmative evidence to repel it, and to justify the introduction in evidence of the instrument objected to. In such case, upon the presentation of evidence showing the absence of any intent to violate the law, the instrument would be admissible in evidence.

By section 163 of the act of 1864 it was enacted that no written instrument requiring a stamp, and *theretofore signed or issued* without a stamp, or with a deficient stamp, should be recorded or admitted in evidence until properly stamped ; and the proper stamp was authorized to be affixed in the

presence of the court or recording officer.   And it was expressly provided that previously executed instruments should not be deemed invalid for want of the requisite stamp, if the same were subsequently affixed.   This section, therefore, provided a summary mode for restoring vitality to every species of instrument previously executed ; and it can scarcely be supposed that congress designed to create so broad a distinction between them and instruments subsequently executed, as perpetually to invalidate the latter, even though defectively stamped, without fraud and by mere inadvertence or mistake.   I can not give such a construction to the law.

The internal revenue act was again amended in 1865, and the 158th section of the act of 1864, as amended by the act of March 3, 1865, (§ 1,) again reduces the penalty to $50, and provides for the affixing of a proper stamp to *any* unstamped or insufficiently stamped instrument, by any party interested therein appearing before the collector of the district, who shall stamp the same on payment of the price of the proper stamp and of a penalty of $50, and of 6 per cent interest on the duty for the time it is in arrears, if such duty exceeds $50 ; and thereupon the instrument shall be as valid as if originally duly stamped.   The collector is authorized to remit the $50 penalty, if applied to within one year from the making or issuing of the instrument, and satisfied by proof, that there was no willful or fraudulent attempt to violate the law.

This is *one* mode of remedying the difficulty arising from an insufficient stamp ; and the question is whether it is the *only* one.   It is the only one which the collector can pursue ; perhaps the only one by which, *out of court*, a party can regularly procure a proper stamp to an instrument not duly stamped.   But if the question arises in a court of justice, and the point is distinctly presented, whether an instrument defectively stamped, without any intent to evade the provisions of the revenue law, may be read in evidence upon proof of those facts, accompanied with a distinct offer to

comply with the provisions of that act, and an actual compliance therewith, I am of opinion that the act of congress has not declared the instrument void, and that it is receivable in evidence.

Section 39 of the internal revenue law provides that in case of the sickness or temporary disability of a collector to discharge such of his duties as can not, under existing laws, be discharged by a deputy, they may be devolved by him upon one of his deputies.

I am without any means of determining, except from the terms of the law itself, whether this particular act of affixing the stamp and remitting the penalty, in the contingency mentioned in the statute, is one of those acts which can not, under existing laws, be discharged by a deputy; but from the phraseology of the law, the somewhat delicate and responsible character of the act, and the trust and confidence implied in its performance, I am inclined to think it was designed to be confided to the collector in person; and that he can not devolve it upon a deputy, except in the event of sickness or temporary disability.

I have thus reviewed all the sections of the internal revenue law to which we have been referred as having any bearing upon the subject under discussion, as applied to the case now before us for review; without discussing the constitutional question. I am of opinion that material evidence was offered on the part of the defendant, which was improperly rejected on the trial. I think it was competent for the defendant to show, as he in substance offered to do, that the insufficiency of the stamp upon the mortgage arose from inadvertence or mistake, and without any intent to evade the provisions of the revenue law, in good faith and without fraud, and thereupon to read the mortgage in evidence. This was excluded, and was fatal to the defense.

I incline to think the approval and indorsement of Mr. Krum, as deputy collector, to the affixing of the revenue stamps, was not sufficient, if they were thus affixed, to

entitle the mortgage to be read in evidence. There is no proof of the sickness or other disability of the collector, nor of his devolution of these duties upon this particular deputy.

But upon the grounds already suggested, and without considering any other questions in the case, I am of opinion that a *new trial should be granted, with costs to abide the event.*

INGALLS, J. concurred.

MILLER, J. dissented.

New trial granted.

[ALBANY GENERAL TERM, May 7, 1866. *Miller, Ingalls* and *Hogeboom,* Justices.]