Vorebeck *v.* Roe.

VOREBECK *vs.* ROE.

The omission to affix a revenue stamp to an instrument requiring a stamp, will not invalidate the instrument, unless such omission be with intent to defraud the government of the stamp duty.

Standing trees form a part of the land, and as such are real property, and a contract for the sale of them is a contract for the sale of an interest in the land, and must be in writing, and falls within the intent and meaning of the recording act.

The enactments of the recording act are of a beneficial and wholesome nature, and they should be reasonably and fairly construed for the protection of a purchaser who without actual or constructive notice to the contrary, receives his conveyance and pays the consideration for it, believing that he is to receive what the deed professes and purports to convey—the land itself with everything which properly and legally constitutes a part of it.

Such a construction will require instruments conveying the timber on land, to the vendee, to be *recorded* in order to secure their validity against the rights of a subsequent purchaser in good faith, of the land, whose deed is recorded.

THE plaintiff in this action claimed to recover damages for the cutting and carrying away of certain timber trees purchased by him, and then standing on premises situated upon Grand Island. The vendor of the trees, after making the contract for the sale of them to the plaintiff, and while those in controversy were standing upon the land, conveyed

the premises in fee to the defendant. And he justified the cutting and removal of the trees under the title acquired by him through such conveyance. The action was referred to a referee, who after hearing the proofs, reported in favor of the defendant. From the judgment entered upon the report, the plaintiff appealed.

*L. LeClare,* for the appellant.

*Frank R. Perkins,* for the respondent.

*By the Court,* DANIELS, J. The instruments severally executed by Joseph Messmer and Catherine Messmer, to the plaintiff, import upon their face a present sale to him of all the wood and timber then upon the premises they refer to, being forty-six acres of land situated on Grand Island, and owned by said Joseph Messmer and Catherine, his wife. And they were valid contracts of sale, because they were subscribed by the party to be charged by them, as the statute of frauds required that they should be, and the omission to properly stamp them, if indeed that was omitted, does not appear to have arisen out of any willful or fraudulent purpose to defraud the government out of its revenue. It is only when the omission is produced by the execution of such a purpose, that the failure to stamp the instrument in controversy will render it void within the act of Congress. Such are its express terms, as well as the construction placed upon them. (*Beebe* v. *Hutton,* 47 *Barb.* 187.)

One of the instruments under which the plaintiff endeavors to make title to the timber in controversy, is dated the 5th of October, 1864, and the other the 8th of August, 1865. The defendant took a deed of the property on which the trees were standing, from the same parties who executed the contracts for the sale of the trees, on the 26th day of June, 1866, and the deed was properly recorded on the 28th of

the same month. The plaintiff's counsel insisted, upon the argument of the present appeal, that the defendant had notice of the contract under which the plaintiff claimed the title to the timber, before he received his deed for the land. Upon that subject the defendant testified, as a witness, that the plaintiff claimed the cord wood on the lot, and when he bought it there was cord wood scattered on the lot. He stated that he had heard about the plaintiff having timber there in 1864, and chopped some for him there in December, 1864. But he said he had no knowledge before he took his deed that the plaintiff had any claim on the land. The plaintiff, on the other hand, when he was examined as a witness, testified that he told the defendant all about his purchase of the timber, and what he had paid for it, when he first chopped for him ; and that the defendant, the next winter, wanted to draw the wood off the lot for him. This appears to be all the evidence given before the referee upon the trial, directly affecting the giving of notice, and it is so fairly balanced, as to present a mere question of fact for the decision of the referee. His conclusion upon that subject was directly against the plaintiff, for he found that the defendant took his deed without knowing that the plaintiff had purchased the standing timber. And under the state of the evidence just mentioned, this court has no authority for disturbing the conclusion of the referee, even if it had the disposition to do so.

This brings up the consideration of the question whether the defendant, as a purchaser, without notice, is entitled to be protected against the sale of the timber to the plaintiff, by the contracts already referred to. There is no direct evidence in the case, showing that the defendant had paid the purchase price of the property, before he was apprised of the plaintiff's rights. But the case shows that his deed was read in evidence, and that probably contained an acknowledgment of such payment. And if it did, that would be presumptive evidence that the fact was as the deed stated it to be. (*Wood* v. *Chapin,* 3 *Kern.* 509.) Without proof

Vorebeck *v.* Roe.

of that fact the referee could not properly have arrived at the conclusion which he did, for payment of the purchase price is essential to constitute a party who has purchased, without notice, a *bona fide* purchaser. Without payment of the purchase price, he is not entitled to protection against the prior, unrecorded interests of others in the same land. The law presumes that the judgment was correctly recovered, and it is for the party alleging error to establish it. In the absence of any thing showing the judgment to have been erroneously recovered, it must be assumed to be just and right. And, under this presumption, as the referee has found against the plaintiff, and could only properly do so by finding that the defendant paid the consideration for the land, it must be presumed that he found that fact proved by the evidence, as he properly might have done, with the deed before him, if that recited a payment of the purchase money. If, therefore, the instruments selling the timber to the plaintiff should have been recorded, to have maintained their validity against the defendant's deed, which was properly recorded, then the conclusions of the referee were right, and the judgment should be affirmed. It is well settled, by the authorities in this state, that standing trees form a part of the land, and, as such, are real property. And a contract for a sale of them is a contract for the sale of an interest in the land. (*Green* v. *Armstrong,* 1 *Denio,* 550. *McGregor* v. *Brown,* 6 *Seld.* 114.) And, as such, it is required by the statute of frauds to be in writing. (3 *R. S. 5th ed.* 220, § 6.) This requirement arises solely out of the circumstance that the contract is one for the sale of an interest in lands. It is not important, in the consideration of this feature of the case, whether the trees themselves, after such a contract has been delivered, will be regarded, by a legal fiction, as being severed from the land or not. Because the statutes deal with contracts, which are, in fact, made for the sale of an interest in the lands. The application of them depends upon

that circumstance alone, and, when that circumstance exists, they cannot be rendered inapplicable by resorting to any mere legal fiction. If such be the nature of the contract, it must be in writing to render it valid, whatever may be the consequences afterwards resulting from it. Being a contract for the sale of an interest in the land, does it fall within the intent and meaning of the recording act? In the case of *Warren* v. *Leland*, (2 *Barb*. 613,) it was concluded that it does not. But, in that case, the subsequent purchaser of the land had notice of the existence of the previous sale of the timber, before he received his deed. The present question was not before the court, therefore, in that case. And it cannot have the weight of a judicial decision upon the point. The statute declares that the term conveyance, as used in the recording act, shall embrace every instrument in writing by which any estate, or interest in real estate, is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity, except last wills and testaments, leases for a term not exceeding three years, and executory contracts for the sale or purchase of land. (3 *R. S. 5th ed.* 59, § 70.) The contract in this case, as between the plaintiff and his vendors, entitled him to enter upon the land, from time to time, for a reasonable period, and cut down and remove the timber from it. So far as it allowed him to enter upon the land, it took the form of a license, but for what he could lawfully and properly do beyond that, it gave him an interest in the land itself. The extent of that interest was the cutting down and appropriation of all the standing timber upon the land. This he had title to, and, as far as that constituted a part of the land, he had title to, or in, the land itself. To that extent the right to cut down and remove the trees was an interest in the real estate upon which they were standing. And that is such an interest as the statute defines and describes when it makes use of the terms, as it does in the section referred to, of "interest in real estate." It requires the instrument by

which such an interest is created, to be recorded, in order to entitle it to be protected against a subsequent *bona fide* purchaser, who has caused his deed to be recorded. Sales of this nature, also, are comprehended by the language used in the succeeding part of this section. For the title to real estate may be legally affected by them. It is impossible to imagine a case where the title would not be affected in law by a contract selling to another the entire timber standing on the land. So far as that subject is concerned, the title to it is transferred from the vendor to the vendee, by the contract of sale. The contract, so far, directly operates upon the land itself, which brings it within the conclusion adopted by the court in the case of *Ludlow* v. *Van Ness*, (8 *Bosw.* 178, 188.) This section expressly includes all instruments in writing by which any interest in the land is created, or the title may be affected in law or equity, subject to three designated exceptions. And the instruments selling this timber are not within either of the excepted cases.

Such instruments are within the mischief which the statute was intended to correct. Its object was to protect purchasers in good faith, whose conveyances should be first recorded, from estates and interests previously created in the land by the grantor, of whose existence they should be ignorant. No reason can exist for requiring the conveyance of a life estate or of a portion of the land in fee, or of a declaration in trust, to be recorded, that does not equally apply to a sale of the standing trees. The grantee, in the deed, if he bought without notice, as the referee has found he did, must have believed, as he had a right to, so far as any thing appeared to the contrary when he received his deed, that he was purchasing and receiving a conveyance of the standing timber, just as much as he was of the earth in which they stood. They constituted, equally with that, a portion of the subject matter included within the terms and description contained in the deed. And to deprive him of the timber, through an unrecorded sale of it, would be, in principle, as

unjust as to deprive him of his estate in the land itself. The former is a part of the latter, and it was just as much the intention of the law to protect the purchaser in buying one, as it was to protect him in buying the other. If it was not, there would seem to be no difficulty in the way of the owner selling the timber to one purchaser, the surface of the soil to another, and the underlying quarries or minerals, if any there were in the land, to a third, and then selling the land itself to a purchaser, whose ignorance of the preceding sales might induce him to suppose he was to receive the subjects of all of them, and to part with his money or property on the faith of that conviction. The statute, construed so as to permit results of that character, would be an instrument of very great injustice. It would become a snare, instead of a protection for innocent and confiding purchasers. And the objects intended to be accomplished by its enactment, would be clearly defeated. The enactments of the statute are of a beneficial and wholesome nature, and they should be reasonably and fairly construed for the protection of the purchaser, who, without actual or constructive notice to the contrary, receives his conveyance, and pays the consideration for it, believing that he is to receive what the deed professes and purports to convey—the land itself, with every thing which properly and legally constitutes a part of it. Such a construction will require instruments like those in question in this suit conveying the timber on the land to the vendee, to be recorded, in order to secure their validity against the rights of a subsequent purchaser in good faith, whose deed is first recorded. The judgment in this case should therefore be affirmed.

[ERIE GENERAL TERM, November 18, 1867. *Daniels, Marvin* and *Davis,* Justices.]