Monell, J.
(concurring). One of the questions in this case is whether the contract was invalid by reason of not being stamped, as required by the 158th section of the act of Congress of June 30,1864. That section provides that any person who shall make any instrument, &c., “ without the same being, duly stamped, or having thereupon an adhesive stamp for denoting the duty chargeable thereon, with intent to evade the provisions of this act” shall forfeit, &c., and such instrument “ shall he deemed invalid and of no effectP
The instruments which formed the contract in this case were six several letters, written by the parties respectively, commencing on the 23d of April and ending on the 13th of December, 1864; and the plaintiff proved that in April, 1865, after the com *104 mencement of the action, they placed the required revenue stamp upon one of the letters addressed to them.by the defendants, which letter contained the offer of the defendants to sell to the plaintiff the coal in question.
The form of the contract in this dase illustrates one of the difficulties in the practical working of the Revenue Stamp Act. Where an entire agreement is included in. one instrument, signed by the respective parties, the letter of the act can be complied with; but where the agreement consists of separate instruments, each signed by one party only, at a different time, or, as in the case before us, of six letters, written at intervals during a period of eight months, and where no contract is formed until the last instrument is signed and delivered,' or the last letter is sent and received, it is difficult to determine when, or upon which of the several instruments, the revenue stamp shall be placed. I do not understand' the act to require that each of the several parts of the agreement shall be stamped, but merely that each sheet or piece of paper upon which it is written shall be stamped; and yet in no other way could there have been in this case a compliance with the statute.
The language of the act is, that “ any person who shall make, sign, or issue* * * * any instrument, document, or paper, of any kind or description whatsoever,” shall forfeit, &c. This language would indicate that each of the separate parts of an instrument, when signed, shall be stamped; so that a Written offer to sell must be stamped at the time it is written or sent, although it has not been and may never be accepted, and until acceptance it is of no force or effect. But there are other parts of the act which, in effect, define the meaning of any “ instrument, document, or paper.”
The stamp required is one “ denoting the duty chargeable thereon,” and the several kinds of instruments, &c., are designated, .and the duty prescribed. Thus, among others, “ agreement, contract, or appraisement” requires, for each sheet or piece of. paper on which the same is written, a stamp of five cents, A contract, therefore, is an “instrument” affected by the *105 section of the act before referred to, and although, when made, each sheet or piece of paper on which it is written must be stamped, yet the act nowhere requires such stamp to be affixed while the contract is merely inchoate. Otherwise it would be necessary to affix a stamp upon each of the incipient writings when written, and to cancel them, as required by the act. Yet such incipient writings, with cancelled stamps thereon, may not become a part of any contract, as where a written offer to sell is not accepted or agreed to. The sensible construction of the act would seem to be, that a contract when formed shall be stamped upon each sheet with the required stamp. Of course the act relates to written instruments only. k. parol contract is not within its provisions.
The act declares that an instrument not so stamped shall be deemed invalid and of no effect, and as it is required to be so stamped at the time the instrument is made, the invalidity relates to the time of making. It is therefore, at least, very questionable whether a subsequent affixing of a stamp would render a contract valid, unless it was affixed in the manner provided by the amendment of the 158th section, by the act of March 3, 1865. I do not, however, propose to examine that question, for it seems to me were clear that the contract in this case was not invalid and of no effect, unless the omission to affix a proper stamp thereon was with intent to evade the provisions of the act.
Mor is it important to consider the amendment of July 13, 1866, which provides that no instrument required to be stamped, which has been signed or issued without being stamped, shall be admitted in evidence, until a stamp shall have been affixed thereto. In this ease the stamp was affixed before trial. Besides, the amendment referred to merely excludes the instrument from being read in evidence, but does not affect its validity.
This brings me to the principal question, namely, upon whom the burden lies of shoAving such intent.
As respects the penalty, the act casts the burden upon the party seeking its remission to prowe there was no intent to evade *106 the law; but the causes which render a contract invalid are left to be established in such manner and by such party as, according to the rules of pleading or of evidence, is usual.
A party objecting, as an unvarying rule, is deemed to hold the affirmative, and must furnish the necessary evidence to predicate the objection. Therefore, if it is objected that an instrument is void by reason of its not being stamped, the objector must show that the omission of the stamp was vyith intent to evade the revenue law.
The section is very clear on this subject. Any person who ' •shall make any instrument, and shall, with intent to evade the law, fail to affix thereon a proper' stamp, shall forfeit, &c., and such instrument shall be invalid. The fraudulent intent is • the offence, and if nohe exist there is no penalty.
. In -all cases of penalty or of crime the law presumes inno- ' cence, and guilt must be established to secure conviction.. The ¡Revenue Act is a penal statute, and if an action were necessary to obtain the fine, no one will doubt that it would be necessary for ■the government to show a fraudulent intent to repel the presumption of innocence. ¡No such action, however, is required, the government being authorized to collect the penalty in the manner that other revenue is collected.
There are two quite different effects resulting from omitting to affix a revenue stamp upon a contract or other instrument. One inures ,to the government, and the other to individuals. But they do not arise from the same cause. The forfeiture or penalty which belongs to the government is incurred whenever a person makes an instrument and omits to stamp it, and the penalty may be, as before stated, collected without action. But if such person seek a remission of the forfeiture, he must satisfy the collector of his innocence of any design to defraud the revenue. Where the effect, however, of omitting the stamp inures to individuals, the omission must be connected with a fraudulent design) which the party seeking to avail himself of the effect must establish by competent proof.
The revenue act is like our statute concerning fraudulent con *107 Veyanc.es, which, renders void every conveyance made with the intent to hinder, delay, or defraud creditors. To avoid a conveyance under that statute, the onus is upon the creditor to establish the fraudulent intent. Indeed, under any statute which, for stated reasons, renders a contract or other instrument void, the attacking party holds and must prove the affirmative. A note void for usury, or under the gaming laws, or for an insufficient consideration, or contracts contra bonos mores, must be shown to be void for these reasons, by the party setting up the objection. Tet in those cases the statute declares the instruments to be void for these reasons only.
If I am correct in the construction of the act, the objection of the appellants’ counsel, that the plaintiff failed to prove a valid contract, is not sound. I think I have shown that something more than failure to affix a stamp was necessary to invalidate the contract, namely, that the act of omission was with a fraudulent design. I have also, I think, shown where the onus probomdi lies. The production of an unstamped contract is proof of a legal contract, and is sufficient proof until its invalidity is shown by bringing it within the provisions of the act. The rule of strict construction of a penal statute has no application to that part of the revenue act which merely renders contracts void, and a clear discrimination is made between the two cases. Congress did not intend, nor does the act require, that the usual rules of evidence should be changed. Had there been such intent, provision would have been made for relieving parties, as are made in respect to the penalty.
In the case of Beebe v. Hutton (47 Barb., 187), it is intimated that it is incumbent upon the party claiming the benefits of a contract to establish his innocence of any fraudulent design. While I fully concur in most of the views so ably expressed in the very learned opinion in that case, I must dissent from the point to which I have referred, for the reasons which I have already stated. I see nothing in the statute which takes it out of the reason of the ordinary rule, which requires proof from the party holding the affirmative, not only because it is impossible to *108 prove a negative, but because the negative does not admit of the direct and simple proof of which the affirmative is capable.
The case of Vorebeck v. Roe (50 Barb., 302) substantially sustains the views I have expressed. In the case of Meyers v. Smith (48 Barb., 536), the Court did not notice the very significant words in the act “ with intent to evade,” &c., but merely assumed that the contract was invalid, because not stamped.
My conclusion is, that an objection to a contract or other instrument because it is not stamped as required by the revenue laws, is unavailing, unless .the pa/rty objecting prove that the stamp was omitted with intent to evade the Act of Congress, and that the mere failure or neglect to affix the stamp is not evidence of such intent.
Concurring in the views expressed by Mr. Justice Jones in this case, I am of opinion that the judgment, as modified by him, should be affirmed.
Fithian, J., concurred.