## Howe v. Carpenter.

Under the act of congress requiring stamps upon written agreements, &c, approved June 30, 1864, the invalidity of an instrument not stamped, as well as the forfeiture imposed, is made to depend upon the existence of the intent to evade the act.

That the parties to an agreement are aware of the requirement of the statute is to be presumed; and their omission to obey it must, in the absence of any explanation, be deemed willful and with intent to evade its requirements.

The act of omitting a revenue stamp is unlawful and injurious to the government, and must be deemed, presumptively, so intended. It comes within the class of cases in which the proof of justification or excuse lies with the party transgressing; and on failure thereof, the law implies a criminal intent.

The plaintiff agreed to keep for the defendant, a sow and six pigs, from the 25th of May, to the 1st of September, 1865, for which he was to be paid two pigs and $5. The plaintiff, after having kept the animals some time, asked the defendant which of the pigs he should take. The defendant said there was no choice except, &c. and that the plaintiff might take which he had a mind to. Three or four weeks after this, the plaintiff, without notice to the defendant, selected two of the pigs and put them by themselves; and the defendant afterwards took them away without the plaintiff's consent. *Held* that the plaintiff had no right of action against the defendant for the taking of the two pigs; as he could not, under the agreement, claim pay for the keeping of the sow and pigs, until the term for which they were to be kept had expired, and the time for a choice of pigs had not arrived, when the action was brought. And that there was no such setting apart of those two pigs for the plaintiff, as amounted to a making of them over, as so much payment in advance.

APPEAL by the defendant from a judgment of a county court.

*Ballard & Warren,* for the plaintiff.

*Waters & Waters,* for the defendant.

*By the Court,* PARKER, J. This action was brought in a justices' court, where the plaintiff was nonsuited. He appealed to the county court, in which the judgment of the justice was reversed, and the defendant now appeals to this court.

Howe *v.* Carpenter.

The plaintiff's claim is for damages, which he has sustained, by reason of the taking from his possession, by the defendant, of the property, or a portion of it, which he held under a written agreement with the defendant, and also of some other property. The part of the agreement material to the questions in the case, is as follows: "Cortland, March 14, 1865. I, John Carpenter, agree to let James P. Howe one pair of horses, two wagons, plough and drag, for one year; and the said Howe is to keep the team well and use it well; and the said Carpenter reserves the team to do his own work, and the said Howe is to pay Carpenter $20 at the end of one year from date." This contract was signed by both parties. No revenue stamp was affixed to it, and no reason given or offered for its absence. The plaintiff took the property mentioned into his possession, and kept it several months, when the defendant took it away, and, on demand, refused to deliver it up.

The contract was received in evidence subject to any objection to its validity.

Manifestly, unless the contract was void, for want of a revenue stamp, the nonsuit was erroneous, for the resumption of the property by the defendant was not pursuant to the reservation in the contract, of the right to use the team, by the defendant, to do his own work. The claim of right to take and detain it, was put, by the defendant, on another ground, to wit, the plaintiff's failure to keep the team well. The keeping of the team well was not a condition on which his right to retain possession of it and the other property depended; and besides, there was no evidence that he had failed to keep it well.

If the contract was void, the plaintiff had no right to retain the property from the defendant, and was, therefore, unless his claim to the other property was better founded, properly nonsuited. So that the first question is, was the contract void for want of a revenue stamp.

This contract was made March 14, 1865, at which time the act of congress requiring stamps, approved June 30, 1864, was in operation; the act of ·March 3, 1865, not having gone into effect until April, 1865.

By schedule B, referred to in section 151 of the act of June 30, 1864, this contract was chargeable with a stamp duty of five cents. The effect of the omission of the proper stamp from an instrument requiring it, is declared by section 158, of the act, as follows: "That any person or persons who shall make, sign or issue * * * any instrument, document or paper of any kind or description whatsoever, * * * without the same being duly stamped, * * * *with intent to evade the provisions of this act* shall for every *such* offense forfeit the sum of two hundred dollars, and such instrument, document or paper shall be deemed invalid and of no effect." The invalidity of the instrument, as well as the forfeiture imposed, is made to depend upon the existence of the intent to evade the act. (*Beebe* v. *Hutton,* 47 *Barb.* 187.) Is that intent to be imputed in this case? That the parties were aware of the requirement of the statute, is to be presumed. (1 *Bl. Com.* 46. *Broom's Leg. Max.* 190.) Thus knowing the law their omission to obey it, must, in the absence of any explanation, be deemed willful and with intent to evade its requirements. In *Beebe* v. *Hutton,* (*supra,*) the party claiming under the unstamped instrument offered to prove that the want of a proper stamp occurred by inadvertence or mistake, and without any intent to evade the provisions of the revenue laws. This evidence was objected to and excluded. On review of the exceptions, at general term, it was held that the evidence was material and admissible, and therefore, improperly rejected, thus impliedly holding that without proof rebutting the presumption of an intent to violate the law, such presumption must prevail.

This holding is in accordance with the principle that

every person is presumed to contemplate the ordinary and natural consequences of his own acts. (3 *Greenl. Ev.* § 14.) The act of omitting the revenue stamp was unlawful and injurious to the government, and must be deemed presumptively, so intended. It comes within the class of cases in which the proof of justification or excuse lies with the party transgressing; and on failure thereof the law implies a criminal intent. (3 *Greenl. Ev.* § 13. 1 *Id.* § 79.)

I am aware that it has been held in Massachusetts, (*Carpenter* v. *Snelling,* 97 *Mass. Rep.* 456,) that the provisions of the act of congress, excluding unstamped instruments from being put in evidence, and declaring them invalid, do not apply in the state courts, but in the United States courts only.

In this state, however, it has been repeatedly held otherwise, and effect has been given, in this court, to those provisions. Besides the case of *Beebe* v. *Hutton,* (*supra,*) see *Cole* v. *Bell,* (48 *Barb.* 194;) *Myers* v. *Smith,* (*Id.* 614;) *Hoppock* v. *Stone,* (49 *id.* 524.)

So far as the property contained in the contract is concerned, therefore, we must hold that the plaintiff had no right to recover for the taking and detaining of it by the defendant.

Besides the contract above mentioned, the parties made another by parol, whereby the plaintiff was to keep for the defendant a sow and six pigs, from the 25th of May to the 1st of September, 1465. This contract is given by the plaintiff in his testimony as follows: "Mr. Carpenter asked what I would keep the sow and pigs for to the 1st of September; I said I did not know; make me an offer. He said he would give me two pigs and five dollars. I said I would take them; all that was said at that time; nothing said about the time he was to pay the five dollars, as I remember. That was all the bargain made about the hogs." This agreement was on or about

the 25th of May, and the plaintiff immediately took the sow and pigs into his possession, pursuant to the agreement. It appears that, at some time after this agreement, there was a conversation between the parties, in which the plaintiff asked the defendant which of the pigs he should take, and that the defendant said there was no choice except the boar pig, and that the plaintiff might take which he had a mind to. That three or four weeks after, the plaintiff, without notice to the defendant, selected two of the pigs and put them by themselves. On the 1st of August following, the defendant took away these two pigs, without the plaintiff's consent. There is no evidence that the defendant knew that the plaintiff had selected them for his own, and it does not appear that they were subsequently demanded of the defendant. This action was commenced on the 2d of August, 1865.

I do not think the plaintiff had any right of action against the defendant for the taking of the two pigs. He could not, under the contract, claim pay for the keeping of the sow and pigs until the term during which they were to be kept had expired. He was no more entitled to the pigs, until that time, than to the five dollars. Nor does he show himself entitled to them under what subsequently passed between the parties. There was no such setting apart of these two pigs for the plaintiff as amounted to a making them over as so much payment in advance. If the defendant offered that advantage to the plaintiff, it cannot be deemed a standing offer, running through the term, of which the plaintiff might, at any time, avail himself, without notice to the defendant. The plaintiff's title to the property could not thus be transferred without his knowledge or consent. If, under the arrangement, he had an implied right to insist that the six should, on his fulfillment of the agreement, be subject to be chosen from, so that he might then have two of a fair average value, he has not shown himself deprived of that advantage. The

time for such choice had not arrived when he brought this action, and no right of action, in that view, had accrued.

Upon the whole case, I am of the opinion that the plaintiff was properly nonsuited, and that the judgment of the county court should be reversed, and that of the justice affirmed, with costs.

[BROOME GENERAL TERM, May 9, 1869. *Balcom, Boardman* and *Parker,* Justices.]