## Case No. 15,580.

UNITED STATES v. LEARNED et al.

[1 Abb. U. S. 483; [1] 11 Int. Rev. Rec. 149.]

District Court, E. D. Michigan. March Term, 1870.

INTERNAL REVENUE — STAMPS — CRIMINAL PROSECUTION.

1. An instrument in the following form, "Due the bearer or" (naming a payee) "———— dollars in merchandise out of our store," signed on behalf of an employer, by his bookkeeper, under his general instructions, and delivered to a person employed to enable him or any one to whom he may transfer it to obtain the goods, in payment for services rendered, is a contract, and requires a five-cent stamp.

2. Upon trial of an indictment for issuing instruments without stamping them as required by law, proof of issuing an instrument unstamped which by law should have been stamped, is sufficient, in the first instance, to warrant a conviction. The jury are to presume that the defendant knew the requirements of the law and intended to evade it, in the absence of some explanation from him.

Motion to set aside a verdict of guilty and for a new trial.

Charles G. Learned and Frederick S. Ayres were brought to trial upon an indictment for issuing an unstamped agreement. Under the instructions given, the jury found a verdict of guilty. The defendants now moved to set aside the verdict, and for a new trial, on the ground of refusal to give certain charges to the jury, and of misdirection in the charges which were given.

On the trial, it appeared that the defendants had been for years extensive manufacturers of lumber at Port Austin, in the district, and that in the prosecution of their business they employed a large number of men. They also dealt in merchandise. They employed a bookkeeper for their general business, and clerks in their store. The books were kept at the store. From about the time of their starting in business, dating back to a period anterior to the passage of the first internal revenue law, they had been in the practice of issuing to their men due bills, payable in merchandise out of their store, in the following form:

"No. 1550.

"Port Austin, Mich., Oct. 28, 1868.

"Due the bearer. or J. L. Coy, Seven Dollars. in merchandise out of our Store.

"(Signed)        Ayers, Leonard & Wiswall.
                        "Van Wart."

---

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

The above is an exact copy of the instrument upon which the prosecution in this case was founded. These due bills were issued by the bookkeeper, but never in excess of the amount appearing to be due, and in all cases were charged to the men in their accounts as so much money. Large numbers of them were so issued. One of the clerks testified that he thought as many as four thousand, during the year 1868. In some instances, the men, or members of their families, would come to the store of defendants and select what goods they wanted to purchase, and then one of the clerks in the store would go to the bookkeeper and get one of these due bills for the amount of goods selected,—the due bill being charged to the man by the bookkeeper, and retained by the clerk as his voucher for the goods thus disposed of—thus operating as a check upon the men, against their getting goods at the store, at any time, to a greater amount than what was due them from the defendants. About one-fourth of all the due bills issued were issued and used in this manner. The other three-fourths were issued directly to the men and taken away by them, and either sold to others, or traded out afterwards by themselves or their families as they might need the goods. They were issued in small amounts, and were often used by the men for other purposes than that of getting goods at defendants' store. They disposed of them sometimes to farmers for produce, and sometimes to other merchants for goods. One merchant doing business some eight miles distant testified that he had seven hundred dollars of them at one time. They were so issued and used with the full knowledge and acquiescence of the defendants, and by their authority and direction. These due bills, including the one in question, were so issued unstamped, and, on the trial, it was conceded by the defendants that they were so issued, with their knowledge and intention. There was no direct evidence, and in fact no evidence at all, except what may be guessed at or inferred from the circumstances surrounding the transactions, explaining or tending to explain why stamps were so omitted. Reasons and excuses for omitting to stamp were offered by counsel, by way of argument, as will hereinafter appear, but none whatever in the proofs.

Upon this state of facts the court charged the jury, among other things, substantially as follows: (1) That, by the law of the land, the instrument in question is a contract. (2) And that as such, an adhesive stamp of five cents was required by the internal revenue law. (3) That the defendants are presumed to know the law. (4) That the omission of a stamp was an evasion of the law, and unless explained, it must be presumed that the defendants so intended.

The defendants' counsel requested the court to charge the jury, among other things, as follows: "(2) That if the defendants made the paper in this case, intending it only as a voucher to the clerks in the store that Coy's account was good for seven dollars, then the defendants are not liable." Which request the court granted, with this qualification: Insert after the word dollars, in next to last line, the following: "And if it got afloat without their knowledge or intention." And in this connection, the court further charged the jury that if the paper in question was actually used as a matter of convenience merely between the bookkeeper and the clerks in the store, and did not go into the hands of Coy or other persons, then it never became an agreement or contract for want of delivery, and no stamp was required. But, whether it was originally intended for such matter of convenience merely, or not, if it went into Coy's hands, or otherwise got afloat, by the authority, intent, or acquiescence of the defendants, then it did become such agreement, and did require a stamp.

Defendants' counsel further requested the court to charge: "(3) That if the defendants did not understand or believe that the paper in this case was a contract, but supposed it was only a voucher, then the defendants are not liable." Which request the court refused.

The reasons assigned in support of the motion to set aside the verdict, and for a new trial, were the following: "Because the court refused to instruct the jury as requested in defendants' second and third requests; and because the court erred in instructing the jury: (1) That the paper mentioned in the indictment was one which required to be stamped under the revenue law. (2) That the defendants must be presumed to know that said paper was one required to be stamped, and that it was their duty to stamp it, and that therefore the law presumes that if they omitted to do so, they intended to evade the provisions of the revenue law. (3) That if said paper went into Coy's hands with the defendants' knowledge, or by their authority, the defendants were required to stamp it."

G. V. N. Lothrop, for the motion.
A. B. Maynard, U. S. Dist. Atty., opposed.

LONGYEAR, District Judge. The questions arising upon this motion will be taken up in the order in which they arose in the charge, rather than the order in which they are presented in the motion. The first and second charges given present the question: Is the instrument mentioned in the indictment—(see copy, ante)—such an one as was required by the internal revenue law to be stamped? If covered by the law at all, it is covered by the first clause of Schedule B, under the head of "Agreement or Contract." 13 Stat. 298.

The question, then, resolves itself simply

into this: Is it an agreement or contract? The answer to this question seems too apparent to admit of argument. But as the question is presented, I shall proceed to consider it.

First. Upon the face of the instrument. The word "due" imports a consideration—an indebtedness; it is between parties capable of contracting, named in the instrument; the amount of the indebtedness or consideration is fixed and definite; the manner and place of payment is clearly defined; a promise to pay is clearly implied; and it was signed by the defendants and delivered. Here are all the elements of a contract, and it is pronounced to be such by the laws of the land. An action could be maintained upon it without any other proof than that of demand and refusal.

Second. Upon matters outside the instrument. The defendants owed Coy the amount in money, for work and labor; the due bill was charged to Coy as so much money, and thereby canceled the indebtedness in that form. Here was an actual consideration. It was due on open account in money; it became due on written contract, in merchandise. Here was a new undertaking on both sides, as to the manner of payment. It is true, it was testified by one of the bookkeepers, that if any of these due bills should have been brought back and delivered up, by the man to whom it was payable, he would, if requested, have canceled it and credited it back to the man in his account, and so change the obligation back to a cash obligation; but there was no pretense that there was any such agreement or understanding with the men; and even if there had been, it could not change the character of the instrument, so long as it was out, as it was not expressed upon its face. Neither could any such verbal understanding be relied on to change the written agreement. Therefore, by the law relating to contracts, the instrument was an agreement, and by the internal revenue law it was required to be stamped. There was, therefore, no error in the first and second charges given.

Third. That every man is presumed to know the law, and that ignorance of the law is no excuse, as general propositions, are too well established to admit of dispute, and their correctness is virtually conceded by defendants' counsel. Now, apply these maxims to this case. It was clearly proven, in fact it was conceded, that defendants authorized the instrument to be made and delivered in the form and manner in which it was made and delivered, and of course they knew it was so issued. As we have already seen, by the laws relating to contracts, the instrument, by having been so made and delivered, became and was an agreement or contract. The defendants are presumed to have known this law. Therefore, knowing as they did, all the facts constituting the instrument an agreement, they are presumed to have known it was such. Again, the instrument being an agreement, the internal revenue law made it the duty of the defendants to stamp it. Therefore, knowing, as we have seen, that it was an agreement, the defendants are presumed to have known that such was their duty. There was, therefore, no error in the third charge given.

Fourth. As to the intent. It is a maxim of the law that every man must be presumed to intend the necessary legal or legitimate consequences of his acts. In this case, the omission of a stamp was a violation or evasion of the internal revenue law. Therefore, the defendants knowing the law, their omission to obey it must be presumed, in the absence of explanation, to have been with intent to evade its provisions. It has been so held in two recent cases in the state of New York, in each of which this precise question was under consideration. See Beebe v. Hutton, 47 Barb. 187, 193; Howe v. Carpenter, 53 Barb. 382, 385. In the case of U. S. v. Conner [Case No. 14,847], a similar question was under consideration. Conner was prosecuted under the bankrupt act of 1841, for perjury, in swearing to a false schedule of property with intent to defraud his creditors. In deciding the case, Judge McLean makes use of this language: "The maxim is admitted that ignorance of the law constitutes no excuse for the commission of a crime." And further on he says, "To constitute perjury under the law" (the bankrupt law above mentioned) "the false schedule must have been made corruptly by the bankrupt, and with intent to defraud his creditors. The falsity of the schedule being established, the mitigating circumstances must be shown by the defendant; and if no excuse be proved, the fraudulent intent will be inferred from the act, it being prima facie in violation of the law." So, too, in Com. v. Bradford, 9 Metc. (Mass.) 272, cited by defendants' counsel, the knowledge of defendant that he had not the right to vote, was treated as a presumption to be rebutted by him, the fact that he had not such right having been first established. The distinction between the two classes of cases, that in which the intent will not be presumed, and that in which it will be, is clearly drawn in 3 Greenl. Ev. § 13, quoting Lord Mansfield in Rex v. Woodfall, 5 Burrows, 2667, in the following language: "When an act, in itself indifferent, becomes criminal if done with a particular intent, then the intent must be proved and found; but when the act is in itself unlawful, the proof of justification or excuse lies on the defendant, and in failure thereof the law implies a criminal intent." In this case the omission of the stamp was an unlawful act—an evasion of the provisions of the internal revenue law, and it must be deemed presumptively so intended. It comes clearly within that class of cases in which proof of justification or excuse lies on the party transgressing. It appears, therefore, that

there was no error in the fourth charge given.

Fifth. The qualification made by the court to the second request of defendant, viz: "That if the instrument got afloat without defendants' knowledge, authority or intent, they are not liable," has been fully disposed of in considering the converse of the proposition, ante, viz: that if the instruments went into Coy's hands, by defendants' authority or intent, then it was an agreement, and required a stamp. For the reasons there given there was no error in refusing to grant the request without such a qualification.

Sixth. The third request of defendants, which was refused by the court, was in the following words: "(3) That if defendants did not understand or believe that the paper in this case was a contract, but supposed it was only a voucher, then the defendants are not liable." It might suffice to sustain the refusal to charge as above requested, to simply state the fact that there was no evidence in the case as to what the understanding or belief of the defendants was in relation to the character of the particular paper in question, or even as to the class of paper to which it belonged, and therefore it might have misled the jury to have submitted such a question to them. It may be said, however, that evidence of their understanding and belief as to the character of the paper is to be found in presumptions arising from their course of business, in relation to this class of paper, as proven on the trial. Relying upon such presumptions alone for proof of what defendants' understanding and belief in this respect was, the case would stand as follows: so far as this class of paper was actually used as vouchers merely between the bookkeeper and the clerks in the store, the defendants would be presumed to have understood and believed them to be vouchers merely, and not contracts; but so far as such paper was delivered to the parties, and thereby became outstanding evidences of indebtedness and agreements to pay as therein specified, the defendants must be presumed to have understood and believed them to be what they actually were, contracts. And this latter presumption gains great force from two other facts in the case: (1) The fact that a large proportion of these papers,—the head clerk in the store says three-fourths of them,—were delivered to the parties, and that only a small proportion of them were used as vouchers merely, from the bookkeeper to the clerks in the store. (2) The use of the word "bearer" in the instrument. Although that word has no effect to make the paper negotiable, yet it may be resorted to, to arrive at the intent, belief, or understanding of the parties, as to the use to be made of the paper. That word could be of no possible use in a paper to be used as a voucher merely; but it is just the word the parties would use if they intended the paper for circulation, however mistaken they may have been as to its legal effect.

It is in proof, also, that these papers did circulate, and were bought and sold to a considerable extent, to the knowledge of defendants. Presumptions, conclusions, and inferences must always be consistent and in harmony with the facts upon which they are founded and from which they are drawn. It might not have been error to have charged as requested; but if the court had so charged he would have been compelled, at the same time, to charge further, as above stated, which would have rendered the charge requested worse than nugatory. Therefore, whether the refusal to give this charge was right or wrong, it has worked the defendants no injury, and could not, in any event, constitute ground for a new trial.

But it is claimed on behalf of defendants that such understanding and belief on their part, as to the character of the paper in question, was induced by or was the result of their construction of the law in its application to said paper, and that therefore the charge should have been given as requested. Or, in other words, that notwithstanding the defendants knew all the facts in the case, and notwithstanding that the law does make the paper a contract and liable to be stamped, yet if the defendants so construed the law for themselves as to lead them to understand and believe that said paper was not a contract, and therefore not required to be stamped, then the intent to evade the provisions of the law did not exist, and they are not liable. In the first place, this proposition has no standing in the proofs. There was no evidence whatever as to what construction the defendants put upon the law, or that they, in fact, put any construction whatever upon it. The argument seems to be: (1) That such construction of the law is a reasonable construction. (2) The action of defendants in omitting the stamp is consistent with such construction. (3) Therefore, they must be presumed to have adopted it. A moment's reflection will show the entire fallacy of this argument. It has already been shown that such construction of the law is not correct, and therefore it is not reasonable, and the first proposition falls to the ground, and with it, of course, the second and third.

But aside from all this, the proposition is not a sound one in law. No man has a right to set up a construction of the law for himself, and then plead it in justification of his violation of the law. See, also, Judge Blatchford's opinion in Quantity of Distilled Spirits [Case No. 11,495]. The distinction between what will, and what will not excuse, is very clearly drawn in McGuire v. State, 7 Humph. 56. Apply the principles there and elsewhere laid down, to this case, and the following conclusions are inevitable. If the defendants knew, as they did know, of the existence of the state of facts which made the instrument liable to a stamp, and yet believed that the instrument was not so liable,

in point of law, such ignorance of the law will not excuse them. With a full knowledge of all the facts before them, and of the consequences of a violation of the law, they assume to construe the law for themselves, and having misconstrued, they must abide the consequences. In the case of U. S. v. Conner (above cited), cited also by defendants' counsel, the facts relied on to rebut the intent to defraud, &c., were: (1) That defendant stated the facts fully to counsel for advice in the premises; (2) that he was advised by such counsel on such statement, as matter of law, that the omission complained of was not contrary to the law claimed to have been violated; and (3) that the defendant acted upon the advice so obtained, in making out and swearing to his schedule; and this was allowed as tending to rebut the presumption of intent to violate the law, for the reason, as stated by the judge in his opinion, that "the defendant thereby showed a desire to conform to the law." That is very different from a case like the present, in which the defendants are claimed to have simply set up a construction of the law for themselves, without the aid of counsel or legal advice, or showing in any manner a desire to conform to the law. If parties may do this, and thus shield themselves from violations of law, then it is far safer for them never to take advice.

In view of the importance of these questions to the government and to the defendants, as well in their application to the case now under consideration as to other like cases, I have given them a careful consideration, with an earnest desire and determination to arrive at correct conclusions, and have settled down upon the conclusions above given with a feeling of confidence that they are correct. The motion to set aside the verdict and for a new trial must be denied.