ELIZABETH CAGGER, administratrix, &c., of Peter Cagger, deceased, *vs.* MARTINUS LANSING.

The plaintiff's testator, having an outstanding title to a farm, alienable to the defendant or any one else, an agreement of sale was made, between him and the defendant, by which the defendant was to pay, for such farm, $5000. He then paid thereon $4000, leaving $1000 unpaid, which he agreed to pay within a few days. There was no other writing, between the parties, than a deed of the premises, subscribed by the vendor and his wife and acknowledged, which, by the consent of the parties, was left with a third person, as an escrow, to be delivered to the defendant when he should pay the remaining $1000.

*Held* 1. That the agreement was not void by the statute of frauds because not in writing and signed by the parties. That it was the agreement of the parties, in writing, and subscribed by the party by whom it was made.

2. That an averment of the defendant's agreement or promise to pay the balance of the purchase money was sufficient to sustain an action therefor, without any allegation of the absolute delivery of the deed, or demand of the balance of the consideration, upon such delivery and acceptance.

3. That the delivery of the deed as an escrow, was, under the circumstances, a sufficient delivery not only to avoid the statute of frauds, but to estop the defendant from availing himself of it as a defense.

4. That the agreement having been performed on the part of the vendor, but not performed on the part of the purchaser, an action at law would lie upon the express promise to pay the consideration, or upon a promise implied in law.

An objection to a deed that it is not stamped as required by the act of congress, is unavailing, unless the party objecting proves that the omission of stamps was with intent to evade the statute. The proof lies with him.

The effect of a deed delivered as an escrow as a conveyance, and its effect as being the written evidence of a contract between the parties to avoid the statute of frauds, should not be confounded. The questions are not identical. *Per* POTTER, J.

Where a purchaser of land, after paying a portion of the consideration and promising to pay the rest, fails to do so, he cannot, on being sued for the balance of the consideration, set up his own breach of promise as a defense to the action, in this, that because he did not perform, the statute of frauds applies ; where he, by reason of the performance by the vendor of everything on his part agreed to be performed, is in possession, and is enjoying the benefits of the estate purchased.

THIS action was brought to recover $1000, the balance of the consideration money for the purchase of the interest of the plaintiff's intestate in a farm in Greenbush, in

the county of Rensselaer. It appeared from the undisputed evidence on the trial, at the circuit, that one Peter W. Witbeck had once held the premises in question, under a lease from Stephen Van Rensselaer, reserving certain perpetual rents, with right of reëntry for non-payment. That Stephen Van Rensselaer, deceased, devised his interest to his son, William P. Van Rensselaer, who had commenced an action of ejectment to recover possession of the lands, for non-payment of rent under the lease. While the suit was pending, William P. Van Rensselaer conveyed his interest to James Kidd and Peter Cagger, and afterwards, in December, 1864, Kidd transferred his interest to Peter Cagger. In the then pending action, the defendant, who had been in possession, was ejected, and Cagger had judgment for possession.

While things remained in this condition, the defendant, by himself and attorneys and agents, commenced negotiations to purchase out Cagger's right, and on the 19th October, 1865, Cagger and the defendant met, and agreed as follows : Cagger was to convey his interest in the premises to the defendant for the sum of $5000, and Cagger executed a deed by himself and wife, conveying to the defendant all his (Cagger's) interest in said farm. This deed was present at this interview between the parties. The defendant then paid down $4000 of the consideration, and asked for a few days' time to pay the remaining $1000. This was consented to by Cagger. The deed was then, by agreement between the parties, handed to Dr. Obadiah E. Lansing, a brother of the defendant, to be handed to the defendant when he should pay the remaining $1000. The defendant failed to pay this $1000, and this action was brought to recover that sum, with interest.

Various objections and exceptions to the decisions and rulings of the court were taken on the trial, not necessary to be stated in this place.

Cagger *v.* Lansing.

*S. Hand,* for the plaintiff.

*A. Bingham,* for the defendant.

*By the Court,* POTTER, J.   On the trial the plaintiff
proved, by sufficient evidence, that her testator had an
estate in the farm in question on the 19th day of October,
1865, that was alienable ; and that the defendant had no
title thereto, unless it was a present possession.

There was, *prima facie,* upon the evidence, an absolute
title in Peter Cagger, by virtue of the judgment proved.
This judgment against the defendant could not be im-
peached or impaired, collaterally, by the defendant, on the
trial in this case.   Under any claim of the defendant, set
up, or claimed to be set up on the trial, Cagger had an
outstanding title, alienable to the defendant, or any body
else, sufficient to constitute a good consideration, upon a
sale.   By the evidence, an agreement of sale was made
between Cagger and the defendant, in October, 1865, by
which agreement the defendant was to pay for the said
farm $5000, and did actually pay thereon $4000 ; leaving
$1000 unpaid, which he agreed to pay within a few days, and
which he has not paid, and this action is brought therefor.
Of these facts there is no controversy, by the evidence.
This agreement was made on the 19th day of October,
1865.   The defendant offered to prove, by various propo-
sitions, that there had been previous negotiations between
the agents of the parties, and the character and terms of
those negotiations, which, on objection, were overruled,
and, I think, correctly ; as, in law, they were merged in
the final agreement.   If they *differed* from the final agree-
ment, it was right to reject them ; if they were identical,
it was immaterial to prove them.   We have already, in
effect, said that the character of the defendant's possession,
prior to the period when the judgment settled the rights
between the parties, was properly excluded, and it appeared

in evidence that the defendant, at the time of the agreement, was in possession only under the title claimed by Cagger.

But the defendant has raised some objections upon the law, arising upon the facts above stated, and also upon such facts as will hereafter appear, to the plaintiff's right to recover; among these is:

*First.* That the contract was void by the statute of frauds, because not in writing and signed by the parties. There was no other writing in this case between the parties than a deed of the premises, which was suscribed by the vendor and wife, and fully acknowledged by them, to the form of which no objection was made at the time, which implies approval; and which deed, by the consent of the parties, was left with one Obadiah E. Lansing, a brother of the defendant, as an escrow, as it was called, to be delivered to the defendant when he should pay the remaining $1000. The statute, " Of fraudulent conveyances and contracts relative to lands," (2 *R. S.* 134, 135, §§ 6, 8,) is too familiar to require transcribing. By section 6, no estate or interest in lands, other than leases for a term not exceeding one year, can be created, granted, assigned, surrendered or declared, unless by operation of law, or by a deed or conveyance in writing subscribed by the party creating, granting, surrendering or declaring the same," &c. And by the 8th section, all such contracts are declared void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom it is to be made.

Here the contract, the memorandum of which was in the form of a deed, was in writing, and was subscribed by the party by whom it was made, and upon that contract $4000 was paid by the defendant. If this was a contract, or the memorandum of one, then the requirements of the statute are complied with. It is insisted that this was not

a contract, because it never took effect by delivery; that it could only be what it purported to be, a deed or conveyance; which can only take effect upon delivery; and that a deed delivered as an escrow does not take effect until the condition is performed, and the deed delivered over to the grantee. In the examination of these questions we must be careful not to confound the effect of a deed delivered as an escrow as a conveyance, and its effect as being the written evidence of a contract between the parties to avoid the statute of frauds. The questions are not identical. An executory contract, less than a conveyance of title, is good against the statute of frauds; and such a contract delivered as an escrow, might save it, as an agreement, from the effect of that statute. It does appear, by the evidence, that the written deed between these parties is a fair memorandum of the agreement by them made on the 19th October, 1865. It was made by the grantor, to the grantee; it was present at their interview; neither raised an objection to it; it was to be the conveyance between the parties; this was the agreement of both on that day; the brother of the defendant was to hold this agreement for the defendant; it was left with him certainly, for the performance of a condition, but it was a condition to be performed by the defendant; Cagger had nothing further to perform on his part. The only act left unperformed was that of the defendant's paying this sum of $1000. It would then be a consummated agreement by both parties. I cannot regard this agreement as one affected by the statute of frauds. It was the agreement of the parties, in writing, and subscribed by the party by whom it was made.

*Second.* It is also urged, that this action is upon an executory contract of sale, and not a promise to pay for land upon the acceptance of a deed, and that therefore the plaintiff cannot recover in this *form* of action. This is not technically correct. It would doubtless be a good

Cagger *v.* Lansing.

complaint upon an executory contract; but it is neither alleged, or proved, to be such. The judgment in the case is in accordance with the proof. The complaint, it is true, is somewhat anomalous, and so are the facts to sustain it. The one, perhaps, not more so than the other. Under the present system of pleading, after judgment, in view of substantial justice, the courts will disregard such informalities in the pleadings as that complained of. The plaintiff's complaint could not, perhaps, have truthfully alleged the absolute delivery of the deed in question, and then have demanded the balance of the consideration upon such delivery and acceptance. The allegation in the complaint of surrendering up possession of the premises to the defendant, whether proved or not, is immaterial. There is a good consideration alleged and proved, without that. The agreement, or promise to pay the purchase money, was alleged, and this is sufficient to maintain the action.

*Third.* The delivery of the deed as an escrow, under the circumstances of this case, is, I think, a sufficient delivery, not only to avoid the statute of frauds, but to estop the defendant from availing himself of it as a defense. By whose default is it that the title did not vest in the defendant? Who only has been guilty of the breach of the condition? Not the plaintiff's intestate. He had performed every act that he could perform. He had not promised to do anything more. The only act that could be afterwards performed was to be performed by the defendant. He had promised to perform this act. He did not keep his promise. He was then sued for this breach, and he sets up his own breach of promise as a defense to the action, in this, that because he did not perform, the statute of frauds applies. This he should not be permitted to do. He is in possession of, and is enjoying the benefits of the estate, of which this $1000 is the consideration, by reason of the full performance by the plain-

tiff's intestate, of everything on his part agreed to be performed. The defendant has accepted this performance on his part, and is now receiving all the benefits which the agreement on the part of Cagger could confer; and it is not in good faith, it is not good morals or good law, to set up his own breach of promise, and to urge the invalidity of his own agreement as a defense. As was said by BOCKES, J., in *Bennett* v. *Abrams,* (41 *Barb.* 619,) "to permit a party to avoid an agreement under such circumstances, on the ground of its invalidity, would be to make the statute of frauds an instrument of fraud, instead of a shield against it." (*See also Malins* v. *Brown,* 4 *N. Y. Rep.* 403.)

There are different characteristics in what is called an escrow. An escrow may be general, or may have a special condition or character attached to it. The general rule is, that a deed left as an escrow takes effect from the second delivery, that is, after the condition is performed. But Chan. Kent says this rule does not apply when *justice* requires a resort to a fiction. (4 *Kent's Com.* 454.) "The relation back to the first delivery, so as to give the deed effect from that time, is allowed in cases of necessity, to avoid injury to the operation of the deed from events happening between the first and second delivery." (*Ibid.*) In *Wheelwright* v. *Wheelwright,* (2 *Mass. Rep.* 452,) Parsons, Ch. J., laid down this rule: "If a grantor deliver any writing as his deed to a third person, to be delivered over by him to the grantee, on some future event, it is the grantor's deed presently; and the third person is a *trustee* of it for the grantee." If, then, that future event was to be controlled by the grantee, who had promised to perform it, and was an act over which the grantor had no power, could the grantee set up the non-performance of the condition, when sued upon his promise? In this case, for the purposes of justice, I think the delivery of the deed might be held to relate back to the day of the agreement,

so far as Cagger and this estate was concerned, and for the purpose of enforcing the performance of the condition against Lansing. His brother, Obadiah E. Lansing, was a trustee for him. Such a fiction as to call that a delivery would be in furtherance of justice in this case. It was not necessary that the term escrow should have been used by the parties. I do not think it was appropriately so used. It was in this case the creation of a mere trust. The deed was to be left with Obadiah E. Lansing for a few days, to enable the defendant to perform his part of the agreement, and that was all. Cagger had fully performed; no condition on his part to be peformed; and he was without power to withdraw the deed.

Where the condition to be performed is the waiting for an event over which neither of the parties has control—such as the determination of a life, or a life estate, or the arrival at a certain age of some person—this is strictly an escrow; the estate would not pass until the second delivery. But where the condition is dependent upon the act of the grantee, and this act is one which in duty, and in law, he is bound to perform, if this is an escrow, it is a special and qualified one. In such a case, if justice demands the performance of the condition, he is estopped from alleging its non-performance. I do not think, however, that the question of escrow, or conditional delivery, is a material question in this case. The action is really to recover for unpaid purchase money of the farm in question. The agreement has been performed on the part of the plaintiff; unperformed on the part of the defendant. An action at law would lie either upon the express promise, or upon a promise implied in law.

*Fourth.* The objection of the want of sufficient stamps upon the deed, under the decisions that have been cited, I think is not well taken. The following cited cases seem to cover this case: (*Beebe* v. *Hutton*, 47 *Barb.* 187; *New Haven Co.* v. *Quintard*, 6 *Abb. N. S.* 128 *to* 143; *Vore-*

*beck* v. *Roe,* 50 *Barb.* 302; *Tobey* v. *Chapman,* 13 *Allen,* 123; *Gerom* v. *Littlefield, Id.* 127; *Welley* v. *Robison, Id.* 128; *Carpenter* v. *Snelling,* 97 *Mass. Rep.* 452.) The proof lies with the objector; none was offered.

*Fifth.* The various objections to the admission of evidence by the judge, and refusal to admit, I have examined, and I do not think them well taken. The questions discussed are all that I have regarded as material. I do not think there was any question for the jury. The judgment should be affirmed.

[THIRD DEPARTMENT, GENERAL TERM, at Plattsburgh, July 5, 1870. *Miller,* P. J., and *Potter* and *Parker,* Justices.]