# CHARLESTON

MOORE, KEPPEL & COMPANY v. WARD et al.

Submitted March 5, 1912.    Decided December 3, 1912.

1. SPECIFIC PERFORMANCE—*Contracts Enforceable—Requirements of Statute of Frauds.*

   If in a suit for specific performance the oral contract for the sale and purchase of land be substantially admitted by defendant in his answer as alleged, it may be enforced, if the statute of frauds be not also pleaded and relied on, such admission in the answer satisfying the requirements of the statute; but if the statute be pleaded and relied on, such admission will not relieve the contract from the ban of the statute.  (p. 393).

2. FRAUDS, STATUTE OF—*Sufficiency of Memorandum—Delivery of Deed in Escrow.*

   If, however, after such oral contract the vendor makes, executes and delivers in escrow, a deed for the land, reciting the consideration, and containing the terms and conditions of the sale, this will amount to a compliance with the statute of frauds, and the contract if so alleged and proven will be enforceable.  (p. 394).

3. SPECIFIC PERFORMANCE—*Proceedings—Sufficiency of Evidence.*

   A case in which upon allegation and proof of such oral contract, supplemented by deed delivered in escrow, and facts alleged and proved respecting plaintiffs' efforts to comply with the terms and conditions of the contract, specific execution should be decreed.  (p. 396).

Appeal from Circuit Court, Randolph County.

Bill in equity by Moore, Keppel & Co. against Wirt C. Ward and others.  From a decree for defendants, plaintiffs appeal.

*Reversed and Remanded.*

*C. H. Scott* and *H. G. Kump,* for appellants.

*W. E. R. Byrne* and *W. B. & E. L. Maxwell,* for appellees.

MILLER, JUDGE:

The decree appealed from, in two causes heard together, denied plaintiffs specific execution of contracts for the sale and purchase of lands as prayed for, and dismissed their bills.

The question in the fore front presented for decision is, are

the contracts, oral in the first instance, but fully set forth in deeds of the vendors, executed and deposited by them in a bank in escrow, enforcible? The answers admit the contracts, substantially as alleged and proven by witnesses, and shown by the deeds in escrow; but defendants plead and rely on the statute of frauds. Our decisions, in consonance with those in other States, say, that where the answer admits the contract substantially as alleged, and does not plead and rely on the statute the contract will be enforced, the answer in such cases supplying the requirements of the statute. *Cunningham* v. *Cunningham,* 46 W. Va. 1; *Atkinson* v. *College,* 54 W. Va. 32; *Barrett* v. *McAllister,* 33 W. Va. 738; *Fleming* v. *Holt,* 12 W. Va. 143; *Howell* v. *Harvey,* 65 W. Va. 310. See, also, Fry on Specific Perf. (5th ed.) 284, 285, 313 and 654. But these and other cases affirm with equal emphasis that if the statute is pleaded and relied on the admission of the contract in a pleading will not relieve the contract from the ban of the statute. See, besides cases cited, 2 Story's Eq. Jur. (13th ed.) §755, and American note to *Pym* v. *Blackburn,* 3 Ves. Jr., 34, 30 Eng. Rep., Full Repr. 881.

But, the statute being pleaded, we have the further question; is the statute satisfied by the deeds *in escrow,* which, as conceded, set forth fully the consideration and the terms of the contract? In other words do these undelivered deeds, which, before suit brought, were withdrawn from the bank, constitute in the terms of the statute, such "promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, * * * in writing and signed by the party to be charged thereby, or his agent" as will relieve the contracts from the interdiction of the statute and give plaintiffs right of action for specific performance? This proposition is affirmed by Mr. Washburn on authority of *Cagger* v. *Lansing,* 57 Barb. 421. 3 Wasburn on Real Prop. (6th ed.) 275. This writer apparently overlooked the fact that that case had been reversed by the court of appeals of New York, 43 N. Y. 550. Referring to the doctrine stated by Mr. Washburn, the supreme court of Indiana, in *Freeland* v. *Charnley,* 80 Ind. 132, 134, says: "We look upon this statement as radically wrong." In Browne on Statute of Frauds (5th ed.), §354b, p. 483, it is said:

"It has been held that, if a person who has made a parol agreement to sell land, sign an instrument in the form of a conveyance of such land to the vendee, and deliver it in escrow, if such instrument contain the terms of the parol agreement, including the consideration, it is a sufficient compliance with the Statute of Frauds." "But," says this writer, "this is opposed to the decided weight of authority." Citing the cases. The rule is stated in substantially the same terms in 20 Cyc. 257; and in support thereof decisions are cited in a note, from Iowa, Maine, Massachusetts, Minnesota, Nebraska, Pennsylvania and Tennessee; and reference is also made to 23 Cent. Dig. tit. "Frauds, Statute of," §208. In the same note, however, decisions are cited *per contra* from North Carolina and Virginia. The Virginia cases referred to are *Bowles* v. *Woodson,* 6 Grat. 78 and *Parrill* v. *McKinley,* 9 Grat. 1, 58 Am. Dec. 212. These Virginia decisions, pronounced before the separation, are binding on us, until overruled. Moreover, in *Reel* v. *Reel,* 59 W. Va. 106, 110, Judge BRANNON, referring to the Virginia cases says: "Though I think it contrary to the weight of authority, yet under *Bowles* v. *Woodson,* 6 Grat. 78, and *Parrill* v. *McKinley,* 9 *Id.* 1, the undelivered deed would be good as a memorandum to answer the demand of the statute of frauds that a contract for sale of land be in writing, and we would have to say whether the mere oral contract would be enough. For myself I do not see why it is not just as requisite that the memorandum of the sale contract be delivered as that a deed be, and so I think say the authorities. But I concede that these cases eliminate the question of a writing." Thus we are bound by and committed to the doctrine of the Virginia cases.

It may be pertinent to notice in this connection, though perhaps not of any controlling effect, that by the terms of the note, written by defendant Ward, to the bank, on delivering the deeds, privilege was accorded the vendees to examine the deeds; and that before they were withdrawn from the bank they were examined by plaintiffs' counsel, and who had endorsed his approval on those in question here, and had notified the bank officer that they would be taken up in a short time.

We conclude that the contract alleged, admitted and proven

as stated, is enforcible, unless on other grounds than the statute of frauds pleaded plaintiffs have lost their right of action.

The first of the remaining defenses is that plaintiffs failed to comply with the terms of the contract within a reasonable time after the deeds were deposited in escrow, and have never as yet complied therewith, or with the conditions of the deposit, so as to entitle them in a court of equity to specific execution.

What are the facts? After the contracts, and after the deeds had been prepared by plaintiffs' counsel, at defendants' request, about July 20, 1904, they were turned over by him to Cobb, who on July 22, 1904, forwarded them, four in number, to defendant Ward, for execution. These deeds were retained by the vendors from that time until September 19, 1904, nearly two months, when they were executed, and put in the hands of Ward, who on that day transmitted them to the bank, with his letter, saying: "I send you four deeds executed to Moore, Kepple & Calkins. Please inform Capt. Cobb (their representative) that the deeds are in your hands ready to be delivered upon compliance with the terms and conditions mentioned in the deeds. I mean payment to you of 1-3 cash and interest bearing notes for the bal. say to him prompt settlement is expected." The bank promptly notified Cobb, and soon afterwards Cobb in company with Maxwell, attorney for plaintiffs, examined the deeds, and as already noted, the latter endorsed on all of them, except one, in pencil, his approval, but payment of the purchase money was not made or tendered until about November 7, 1904. This delay is explained by the evidence that after the deeds had been made and deposited in the bank, some one or more of the Huttons, hard pressed for funds, appealed to Cobb to get the purchasers to pay all cash instead of one-third cash and the balance on credit, as provided in the deeds. Cobb succeeded in getting the purchasers to do this. They had already, in July, after the agreement and about the time the deeds were prepared and sent the vendors, paid to Cobb the cash payment called for; and followed this by payment to him of the balance, in November, just before Cobb, on November 7, 1904, remitted the money to the vendors, deducting *pro rata* the costs of a survey and the amount of a note on which Col. E. E. Hutton and Ward were liable, as indorsers, as Cobb testifies by direction

of Ward. The remittances for N. B. Hutton and Ward, were on November 12, returned to Cobb through Hutton, who in his letter says: "We return your letters and drafts, we will not accept them as the settlement is not correct. We will settle according to deeds in the bank." These remittances had been made by Cobb to and through Col. E. E. Hutton, who accepted his money, and delivered his deed. And afterwards, and after the deeds of the others had in April, 1905, been withdrawn from the bank, plaintiffs acquired in some way all the undivided interests of A. Hutton in the lands sold. The bills allege, what is substantially admitted in the answers, and fully established by proof, that before and after the deeds were withdrawn from the bank Cobb and defendants continued their efforts to adjust their controversies about costs of survey; the note endorsed by Ward and Hutton, paid by Cobb out of the purchase money; the question of additional compensation to A. Hutton for certain timber trees, on some of the lands of the others, and the demand of N. B. Hutton and Ward for interest on the money due them from the date of the deposit of the deeds till payment. Plaintiffs finally acceded to all these demands of the defendants, except as to the personal controversy between Cobb and Ward regarding the deduction for the note paid, with which they had had nothing to do, and proposed that the full amount of purchase money might be paid over without the other deductions. This offer was declined by Ward. In the mean time he had purchased from N. B. Hutton all the latter's interests in the lands sold, and obtained a deed therefor from him, as he claims, in consideration of having paid off a deed of trust on the land in favor of one Turner for about ten thousand dollars, purporting to have been executed by Hutton to Baker, trustee, about February 26, 1907. Wherefore the whole controversy now remaining is between the plaintiffs on the one side and Ward on the other.

A very pertinent fact not heretofore noted is that on January 30, 1905, while the deeds were still in the bank, Cobb paid N. B. Hutton, out of the money sent him by plaintiffs, twenty-five hundred dollars, who on that day wrote Cobb as follows: "By this letter I acknowledge the receipt of your draft of this date on the Elkins National Bank, Elkins, West Virginia, in

the sum of Twenty Five Hundred ($2,500.00) Dollars, which sum is to be returned to you on thirty days notice, if the negotiations now pending regarding the sale of certain lands to J. B. Moore and others fail to go through and be consummated." Ward knew of this payment by Cobb to Hutton, for he swears that he afterwards went with Hutton to Cobb and offered to refund the money, which Cobb declined to receive. Whether this was before or after Ward took his deed from Hutton for the latter's interests in these lands, we do not find clearly shown in the record; but we think from other facts and circumstances shown, it may be fairly assumed it was before the deed, and before Ward's alleged payment of the deed of trust. Cobb swears that it was one or two years after the money had been paid Hutton. Ward seeks to further fortify his claim to hold the N. B. Hutton interest in these lands as against plaintiffs, upon the ground that Baker, the trustee, and Turner, the trust creditor, in the deed of trust, paid off, were innocent purchasers without notice of plaintiffs' equities, and by right of subrogation. In answer plaintiffs prove by Cobb that he gave notice by letter or verbally to Baker and Turner, of plaintiffs' rights, before the execution of that trust. The bill alleges that the deed of trust was fraudulent and void, as against plaintiffs, and was made for the purpose of defrauding them, and that Baker and Turner had notice. Neither Baker, the trustee, nor Turner, the trust creditor, were put upon the stand to deny notice.

Another significant fact not already noted is, that Ward, who had denied Cobb's right to pay the note endorsed by him out of his share of the purchase money, admits that Cobb took up the note and sent it to him, and that he retained it, and was liable for at least half of it. His pretension is that he did not know that Cobb had paid the note out of the purchase money. He claims that Cobb was otherwise indebted to him, a fact emphatically denied by Cobb, who swears that he had definite instructions from Ward by telephone through one of the Huttons to pay this note out of the purchase money in his hands, and that he afterwards saw Ward, who confirmed his act. It clearly appears that plaintiffs paid to Cobb the whole of the purchase money, part of which was so distributed to some of

the defendants and tendered the others; and Ward swears that he and N. B. Hutton did not and would not have refused payment through Cobb, upon the ground alone that the money was not paid in to the bank, according to the conditions of his letter, depositing the deeds in escrow. His main objection and the only one insisted upon is that Cobb undertook to deduct his share of the costs of survey, and the note paid, and because interest was not paid, as already noted. We must say that the facts tend strongly to support the contentions of the plaintiffs that the defendants were to pay the costs of survey, in the event that the plaintiffs finally purchase the land. This fact is proven by the testimony of the witness Moore, a son of one of the plaintiffs, by Cobb, and by other corroborating facts and circumstances given in evidence. But this question and the question of interest and all other questions were waived by plaintiffs, we think, under all the facts and circumstances in the case, within a reasonable time. They are nevertheless held up by Ward, in the manner detailed, mainly upon the ground that Cobb deducted from Ward's share of the purchase money the note endorsed by him as stated. On this question Cobb swears that the whole of this note, not half of it, as Ward contends, was chargeable to Ward; that there were two of these notes, equal in amount, upon which Ward and Col. E. E. Hutton were equally liable, and that the other one had been in some way, not definitely shown, wholly discharged by Hutton, leaving the other one properly chargeable to Ward. There was much contestation over the question whether Capt. Cobb was the agent of appellants or of defendants in the sale and purchase of these lands. It is substantially conceded that if Cobb was defendants' agent to make the sale and collect the money, there was substantial compliance by plaintiffs with the terms of the contract, when the money was paid to Cobb. Moore swears and Cobb swears that the latter was not plaintiffs' agent. Capt. Cobb was the son-in-law of Col. Hutton, and related by marriage to the other defendants. Col. Hutton swore that Cobb was his agent and that he understood he also represented the other vendors. As further tending to support plaintiffs we find letters from some, if not all of them, urging Cobb to see Moore, and endeavor to sell their lands. No one claims that Cobb was the

general agent of plaintiffs to whom defendants might go to sell their lands. Cobb had no contract with plaintiffs for compensation, and being related to defendants, Cobb testifies, he had made no charge for commissions against them. But defendants argue that conceding Cobb to have been their agent to sell, he was not their agent to collect the purchase money; because they had lodged their deeds in bank, and notified Cobb, who notified plaintiffs, and plaintiffs had no right therefore to pay Cobb. But some of them, including N. B. Hutton, accepted the money from Cobb, and as noted, Ward would not have declined payment through Cobb, if the latter had not made the deductions referred to. We think the weight of the evidence strongly points to Cobb as the agent of defendants rather than as agent of plaintiffs, though there is conflict. It may be contended that the decree below amounted to a finding in favor of defendants on this controverted fact, and that that finding should not be disturbed. Conceding this proposition, should plaintiffs be denied specific execution? As already remarked some of the defendants took the money from Cobb, and delivered their deeds, and if Ward authorized Cobb to pay the note endorsed by him, as Cobb swears, that was a recognition of Cobb's agency, at least to pay the note, and amounted to a ratification of Cobb's authority to collect the money, conceding that he had not been previously authorized to do so. By receiving and retaining the note, a fact not controverted, the force of Cobb's testimony on this point has strong corroboration. Ward had no right from anything shown in the record to expect Cobb to pay this note for him. Besides this was a matter solely between Cobb and Ward, arising after payment of the purchase money by plaintiffs to Cobb, and with which they had no connection, and for which they were not responsible. Having conceded to defendants all other points in controversy, should we deny them the fruits of their purchase? We are unwilling to do so. Justice and equity cry out against it. Our conclusion is, that whether Cobb be regarded as agent for plaintiffs or for defendants, plaintiffs, though not literally perhaps, have substantially complied with the terms of the contract, and are entitled to specific execution, so far at least as the defense of delay and the question of agency are involved.

But we have not fully disposed of the defense pertaining to the interest of N. B. Hutton. As already noted, Ward claims right to that interest unaffected by the contract of sale, and by right of subrogation. On this proposition we think we must say, on the evidence, that the allegation of the bill, that Turner, the trust creditor, and Baker, the trustee, had notice of the plaintiffs' rights before the date of the deed of trust. If so, they would not be protected as innocent purchasers; and if they would not, certainly Ward, who had full notice, cannot claim protection. All the circumstances of the execution of the notes and deed of trust to Turner are not shown. Ward says he paid the notes. But the notes were given in payment of an interest in the Randolph Hotel property. May not Turner and Ward have been also secured by a lien on that interest? It is hardly conceivable that Ward would have taken a deed from N. B. Hutton for the latter's interests in said lands in full payment of the notes purchased, when but a short time before he had joined in a sale to plaintiffs at a price which would have netted Hutton less than half the amount of those notes. But whether he did or not is of little consequence in the decision of this case.

We are not unmindful of the general rule that one who seeks specific execution of a contract must show himself to have been always ready, able and willing and anxious to execute the contract on his part. But can defendants under the facts and circumstances of this case invoke that rule as a defense? We think not. All that was required of them was to pay the purchase money. Had they not done that, or made an effort to do so, as they supposed, to defendants' agent? True defendants deny the agency of Cobb, but by their acts we have found they waived that question. On the controverted facts as to who was to pay for the survey, and whether interest should be paid, we think enough has been shown to justify some delay on this ground. Certainly those controversies which were finally conceded to defendants, should not be regarded a sufficient departure from the terms of the contract, and failure of performance, as to deny specific execution, whatever may have been the merits of these controversies on the side of defendants.

Our conclusion on the whole case is that the decree below

should be reversed, and the cause remanded to the circuit court, with directions to ascertain what amount may be still due defendant Ward, on account of his own and the interests of N. B. Hutton in the purchase money, by first crediting him with their shares of the original purchase price, and as shown by their deeds, with interest thereon from September 19, 1904, the date the deeds were deposited in escrow, to November 7, 1904, the date payment was tendered by Cobb, and by debiting him with the payment of $2,500.00 to N. B. Hutton, January 30, 1905, and with $1,515.00, the amount of the note paid by Cobb for Ward, November 7, 1904; and having so ascertained the balance, that a decree be entered for the specific execution of the contracts as alleged, and that upon the payment thereof by plaintiffs or Cobb to Ward, with interest from the date of such decree, that Ward execute and deliver to plaintiffs a good and sufficient deed, with covenants of general warranty, for the interest of himself and of said N. B. Hutton, so acquired by him, in the lands sold plaintiff, or in default of such execution, that a commissioner be appointed, authorized to execute such deed for and in his behalf. And the mandate of this Court will go accordingly.

*Reversed and Remanded.*