**DAY et al. v. TOWNSEND et al.***
(No. 284–3532.)

(Commission of Appeals of Texas, Section B.
March 1, 1922.)

**1. Escrows ⬳4—Assignment of oil lease left
with bank for delivery is an "escrow."**

Where a lessee under an oil lease left with
the bank a duly executed assignment of the
lease, and the assignee deposited a draft for the
stipulated consideration for the assignment,
with directions that the assignment was to be
delivered to the assignee and the draft to the
assignor, if the attorney for the assignee ap-
proved the title to the land covered by the
lease, there was a delivery in escrow, which is
a delivery of a written instrument to a third
party to be kept until the performance of a
condition or the happening of a certain event,
and then to be delivered to the grantee.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Escrow.]

**2. Frauds, statute of ⬳103(1)—Assignment
placed in escrow under oral agreement is suf-
ficient memorandum.**

A written assignment of an oil lease, placed
in escrow for delivery to the assignee on the
happening of the stated event, is a sufficient
memorandum of the contract to comply with
the statute of frauds, though the instructions
for delivery of the escrow were not in writing.

**3. Appeal and error ⬳1050(2)—Admission of
immaterial evidence reversible only if it af-
fected result.**

While immaterial evidence is inadmissible,
its admission is not a ground for reversal of
the judgment, unless it improperly influenced
the result.

**4. Appeal and error ⬳1050(2)—Immaterial
oral evidence, confirming assignment already
in evidence, is harmless.**

The admission of oral evidence as to the
land covered by the lease assigned to plaintiff,
which was immaterial because the written as-
signment already in evidence designated the
land covered thereby more particularly than
the oral evidence, could not have affected the
result, where there was no dispute as to the
land covered by the lease, and especially where
the defendants themselves orally testified that
the lease covered those lands, so that the admis-
sion of such evidence, if erroneous, was not
prejudicial to defendants.

Error to Court of Civil Appeals of Second
Supreme Judicial District.

Suit by F. E. Day and others against F.
W. Townsend and others. Judgment for the
plaintiffs was reversed and remanded by the
Court of Civil Appeals (224 S. W. 283), and
the plaintiffs bring error. Judgment of the
Court of Civil Appeals reversed, and that of
the district court affirmed.

W. W. Moore, Beeman Strong, J. Y. Pow-
ell, and T. J. Arnold, all of Houston, and
Jno. C. Kay, of Wichita Falls, for plain-
tiffs in error.

Conner & McRae, of Eastland, and J. M.
Wagstaff, of Abilene, for defendants in er-
ror.

POWELL, J. On the 14th day of Febru-
ary, 1918, W. L. Thornton and wife executed
a certain oil and gas mining lease in favor
of F. W. Townsend, who placed the same
of record in the office of the registrar of
deeds of Erath county, Tex., where the 110
acres of land covered by said lease was sit-
uated.

An oil boom struck this section in the sum-
mer of 1918, and especially at Desdemona.
On September 3, 1918, the legal title to said
lease was in Townsend, but an equitable in-
terest therein was owned by S. W. Bishop
and J. M. Higginbotham. On the date last
aforesaid, F. E. Day entered into a verbal
contract with the said Bishop, who was also
an active attorney in the oil field in ques-
tion, purchasing this 110-acre lease for a con-
sideration of $100 per acre. After Bishop
agreed to this sale, he obtained the consent
of Townsend and Higginbotham thereto, and
on the afternoon of the said 3d day of Sep-
tember, 1918, prepared an assignment, con-
veying the aforesaid lease to F. E. Day.
Shortly after it was prepared, Bishop, ac-
companied by Day, went to the Farmers'
State Bank & Trust Company of Gorman,
Tex., and had a conversation with Day in
the presence of W. M. Collie, cashier of said
bank. This interview occurred late in the
afternoon of that day, after banking hours.
Bishop told Collie that Townsend would sign
the conveyance the following morning.
Thereupon he turned the assignment over
to Collie, which reads as follows:

"Assignment of Oil and Gas Lease.

"Whereas, on the 14th day of February, 1918,
a certain oil and gas mining lease was made
and entered into by and between W. L. Thorn-
ton and wife, Della Thornton, leasor, and F. W.
Townsend, lessee, covering the following de-
scribed land in the county of Erath and the
state of Texas, to wit: * * * Said lease be-
ing recorded in the office of the register of
deeds in and for said county in book ——,
page ——; and,

"Whereas, the said lease and all rights there-
under or incident thereto are now owned by
F. W. Townsend:

"Now, therefore, for and in consideration
of one dollar (and other good and valuable
considerations), the receipt of which is here-
by acknowledged, the undersigned, the present
owner of the said lease and all right thereunder
or incident thereto, do hereby bargain, sell,
transfer, assign and convey unto F. E. Day all
of his right, title and interest of the original
lessee and present owner in and to said lease
and rights thereunder in so far as it covers the
above-described 110 acres of land, together
with all personal property used or obtained in
connection therewith to F. E. Day and his

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied May 3, 1922.

heirs, successors and assigns, subject, however to the conditions and stipulation in said lease contained.

"And for the same consideration, the undersigned for himself and his heirs, successors and representatives, do covenant with the said assignee, heirs, successors and assigns that he * * * the lawful owner of the said lease and rights and interest thereunder and of the personal property thereon or used in connection therewith; that the undersigned has good right and authority to sell and convey the same, and that said rights, interest and property are free .and clear from all liens annd incumbrances, and that all rentals and royalties due and payable thereunder have been duly paid.

"In witness whereof, the undersigned owner and assignor has signed and sealed this instrument, this the 3d day of Sept. A. D. 1918.
                                    "F. W. Townsend."

Whereupon Day turned over to Collie a draft reading as follows:

"Farmers' State Bank & Trust Co.
of Gorman, Texas.

"Gorman, Texas, Sept. 3, 1918.

"Pay to the order of F. W. Townsend, $11,-000.00, eleven thousand and no/100 dollars, with exchange.
                                    "F. E. Day.
"To First State Bank, Eastland, Texas."

Upon the back of that draft, Day indorsed the following:

"To be paid upon approval of title by H. P. Brelsford, attorney.
                                    ".F. E. Day."

The written instruments copied above speak for themselves. Townsend, as per the promise made by Bishop to Collie, had executed the assignment on the morning of September 4, 1918. The only question of fact in this case about which there can be any doubt is as to the length of time Day was to have in which to accept the assignment so left in escrow. Townsend and his associates all contend that Day was under contract to accept the assignment in 24 hours after the abstract of title to the property being conveyed had been delivered to him by Bishop. On the other hand, Day claimed he was to have 24 hours after he placed the abstract in the hands of his attorney in which to accept or reject the title. In this connection, all the witnesses admitted that if Day had produced the $11,000 by mid-afternoon of September 4, 1918, or within 24 hours of the time Bishop had given him the abstract in question, he would have been entitled to possession of the aforesaid assignment.

Attorney Brelsford was not available on September 4, but he was found on September 5. On the evening of the latter day, Day called up Cashier Collie, and accepted the title. On the morning of the following day, or on September 6, 1918, the First National Bank of Gorman tendered the money in question to Collie. The money was refused. Collie made this refusal for the stated reason that Townsend had instructed him not to deliver the assignment to Day at any time later than the afternoon of September 4. Thereupon, this suit originated in the district court of Eastland county, Texas—

"upon a petition filed by F. E. Day against F. W. Townsend, J. M. Higginbotham, S. W. Bishop, and the Farmers' State Bank & Trust Company of Gorman, Tex., as defendants, in which suit Frank Cullinan requested, was granted permission, and did file, a plea of intervention. The suit was for the custody and possession of a certain oil and gas lease, executed by W. L. Thornton and wife to F. W. Townsend, on the 14th day of February, 1918, covering 110 acres of land in Erath county, Tex., and for the custody and possession of an assignment of said lease, executed by the said Townsend to plaintiff, Day, on the 3d day of September, 1918, which said lease and the assignment thereof were alleged to be in the possession of the defendant bank in escrow, which said bank refused to deliver same to the plaintiff, Day, because of acts, words, and conduct to and with said bank by the defendants, Townsend, Bishop, and Higginbotham; said defendants making a pretended claim to the lease and assignment. Plaintiff prayed for delivery of said lease and assignment, and to divest defendants of their pretended claim or interest therein. Intervener, Cullinan, alleges purchase of the lease from plaintiff, Day, and asks judgment against all parties for said lease."

The defendants pleaded, as a defense, the statute of frauds, claiming that a deed placed in escrow was in violation thereof, in the absence of a separate contract in writing to convey an interest in land. They also defended on the ground that the assignment executed by Townsend to Day did not sufficiently describe the land covered by the lease to identify it, so as to comply with the statute of frauds. A general denial was pleaded by the defendants, as well as other matters of no material bearing upon the case.

The trial was had before a jury upon special issues, and upon the answers of the jury thereto the court entered judgment, decreeing the ownership and possession of the lease and assignment aforesaid to Cullinan and Day, and divesting out of Townsend, Bishop, and Higginbotham all interest or rights in either the lease or the assignment. The court further provided that the lease and assignment should be delivered to Cullinan and Day upon the payment by the latter of the $11,000, the agreed consideration for the execution of the assignment. The court amply protected Townsend and his associates in the payment of the sum of money aforesaid.

Townsend and his associates filed a motion for new trial, which was overruled by the district court. Thereupon they appealed to the Court of Civil Appeals at Fort Worth, where the case had a very unusual experi-

ence. Three different opinions were rendered by that court. On February 28, 1920, that court reversed the judgment of the trial court, and rendered judgment for Townsend and his associates. On April 17, 1920, upon motion by Day and Cullinan, that court granted a rehearing and affirmed the judgment of the district court. On May 29, 1920, that court, upon motion by Townsend and his associates, granted a rehearing, and reversed the judgment of the trial court, and remanded the cause to the latter court for another trial. All three of these opinions of the Court of Civil Appeals are published in 224 S. W. 283 et seq. After the case was reversed and remanded by the Court of Civil Appeals on May 29, 1920, Day and Cullinan filed another motion in that court for rehearing. It was overruled. Whereupon they filed application for writ of error in the Supreme Court. The writ was granted, and the cause is now before us for review and recommendation.

[1] After all, this case is a very much simpler one than our preliminary statement of its history might indicate. It involved merely an ordinary sale of a customary oil lease. As before stated by us, there was really but one issue of fact in the case. There was no issue as to whether or not the assignment was placed in escrow. The undisputed facts so show. The Court of Civil Appeals very correctly found, as a fact, in its very first opinion, that the instrument signed by Townsend and left in the hands of Collie for delivery to Day was in escrow. The Court of Civil Appeals properly held that no finding of the jury was necessarily inconsistent with that statement on its part.

An escrow is defined by Devlin on Deeds, § 312, as follows:

"A delivery may be made to a third person conditional on the performance of an act or the happening of an event, whereupon it is to be delivered to the grantee. Such delivery to a third person is called an escrow."

Ruling Case Law, vol. 10, p. 621, § 2, defines escrow as follows:

"An escrow is a written instrument which by its terms imports a legal obligation, and which is deposited by the grantor, promisor, or obligor, or his agent, with a stranger or third party, to be kept by the depositary until the performance of a condition or the happening of a certain event, and then to be delivered over to the grantee, promisee, or obligee."

The one issue of fact was the length of time Day was allowed, under the contract between these parties, in which to close the contract and accept the assignment, and incidentally whether or not he complied with the contract within the time to which the jury found him entitled. The evidence in this connection was highly conflicting, but the jury answered in favor of Day and Cullinan, as follows:

"(1) That Day was to have 24 hours after the abstract was placed in the hands of his attorney, H. P. Brelsford, in which to accept or reject said title and to pay the money due therefor.

"(2) That Day did pay, or offer to pay, defendants the sum stipulated, to wit, $11,000, within said 24 hours after the abstract had been placed in the hands of H. P. Brelsford, his attorney.

"(3) That it was not the agreement that Day was to have only one day from and after the delivery of the title to plaintiff to pay the consideration."

It will be observed that the jury twice found against Townsend's contention that, under the contract into which they all entered, Day was required to close not later than the afternoon of September 4.

Under these findings of fact by the jury, it seems clear to us, if we are correct in our conclusions upon the points to be hereafter discussed by us, that Day and Cullinan were entitled to a delivery of this assignment left in Collie's hands by Bishop, and that the trial court very properly so decreed. We have here a contract binding alike upon all the parties, and in which ample consideration for all parties was provided.

The controlling questions upon this appeal have been accurately so designated by the Court of Civil Appeals in its several opinions. Each of its decisions was made to turn upon one outstanding point. We shall now proceed to a discussion of those points.

[2] In its first opinion the Court of Civil Appeals not only held that the assignment was deposited with Collie in escrow, but they also correctly overruled the contention of Townsend and his associates to the contrary, and held that the description in the assignment was sufficient. The sole reason given for its first opinion, rendering judgment for Townsend, is summed up by the Court of Civil Appeals as follows:

"The majority have concluded that the instrument signed by Townsend was not a memorandum in writing of the parol contract of sale and purchase of the lease agreed upon between the parties, and the right to the enforcement of which was made the basis of plaintiff's suit, but was a present conveyance of the lease, and as such it comes within the rule laid down in Simpson v. Green; it being a familiar rule that delivery of a conveyance is just as necessary as its execution to give it legal effect."

The Court of Civil Appeals, in ruling as just above quoted, relied largely upon the rules it had announced in case of Simpson v. Green, 212 S. W. 263.

Shortly after its first opinion in the case at bar had been delivered, the Supreme Court granted a writ of error in the case of Simpson v. Green, supra, indicating very clearly

its disagreement with the views of the Court of Civil Appeals therein. Upon the strength of that notation, and even before the case was finally decided in the Supreme Court, the Court of Civil Appeals wrote its second opinion in the instant case, speaking as follows:

"If the written instrument placed in escrow with Collie was sufficient as a present conveyance or as a memorandum in writing which would bind grantors, then this judgment should be affirmed. Bott v. Wright, 62 Tex. Civ. App. 632, 132 S. W. 960, 962; Smith v. Moore, 155 S. W. 1017, 1019.

"Motion for rehearing granted, former judgment set aside, all assignments overruled, and judgment affirmed."

That the assignment placed in escrow with Collie was sufficient as a present conveyance, or was a memorandum in writing which would bind grantors, thereby complying with the statute of frauds, is now definitely settled by the opinion of Justice Gallagher of section A of the Commission of Appeals, in the case of Simpson v. Green, 231 S. W. 375. After granting the writ of error in this case, as aforesaid, the Supreme Court referred it to the Commission of Appeals. Judge Gallagher recommended a reversal of the decision of the Court of Civil Appeals in this case, overruling them definitely and completely. The Supreme Court adopted the judgment recommended by the Commission of Appeals, speaking by Judge Gallagher, as aforesaid, and approved the latter's holdings discussed in his opinion. In the case of Simpson v. Green the written instrument was an ordinary general warranty deed, placed in the hands of a third party to be delivered upon the payment of the purchase money by the grantee in the deed. A significant portion of Judge Gallagher's opinion is the following:

"Where there is a prior verbal contract of sale and the recitals in the deed placed in escrow in themselves, or in connection with other writings submitted therewith, meet the requirements of the statute of frauds of the jurisdiction in which the suit arises, we think the better reasoning sustains the proposition that the deed so deposited is a genuine escrow, and therefore irrevocable, and that the prior verbal contract so evidenced is thereby rendered enforceable. 2 Elliott on Contracts, p. 570; 10 R. C. L. p. 629, par. 11; Griel v. Lomax, 89 Ala. 420, 6 South. 741; Johnston v. Jones, 85 Ala. 286, 4 South. 748; Campbell v. Thomas, 42 Wis. 437, 24 Am. Rep. 427; Moore, Kappel & Co. v. Ward, 71 W. Va. 393, 76 S. E. 807, 43 L. R. A. (N. S.) 390, Ann. Cas. 1914C, 263; Thayer v. Luce et al., 22 Ohio St. 62; Minn. & Oregon Land & T. Co. v. Hewitt Investment Co. (D. C.) 201 Fed. 752, 759; Bronx Inv. Co. v. National Bank of Commerce, 47 Wash. 566, 92 Pac. 380; McGee v. Blankenship, 95 N. C. 563; Blacknall v. Parish, 59 N. C. 70, 78 Am. Dec. 239."

In its final opinion, the Court of Civil Appeals reversed the judgment of the district court, and remanded the cause to that court for another trial because F. E. Day was permitted, over objection, to testify upon the trial as follows:

"I understand that [referring to the lease] is a part of the W. L. Thornton land, and covers the same land described in the petition. I understand that is what the assignment covers. It seems to me the defendant told me that it was the W. L. Thornton lease. Mr. Bishop delivered me his abstract, describing the land that I was buying. The land and abstract is described as the Thornton land. I saw the original lease, also. That described the same land as the above. Now, about the original lease—I don't think I have seen the original lease. I saw the certificate of the abstractor. I saw the lease was recorded, and I saw the abstracter's certificate."

Defendants in error objected to that testimony, not only because they alleged it to be irrelevant and immaterial, but because it was not the best evidence of the contents of the Thornton lease to Townsend, which was a written instrument. Upon the latter point, the Court of Civil Appeals held the evidence inadmissible, and its reversal of the judgment of the trial court was based solely upon the admission of this testimony.

Plaintiffs in error, in their application for writ of error, present four separate reasons, either of which they claim should have prevented a reversal of this case upon the ground in question. We do not think it necessary to discuss all of those reasons given by counsel, for we think one of them is decisive of the question. Counsel for Day seriously contend that the testimony was admissible. But, for the purposes of the present decision, we shall concede that the Court of Civil Appeals correctly held it inadmissible.

[3] But, while immaterial evidence may be inadmissible, its admission is by no means always a ground for reversal. In fact there is a well-settled rule of decision in this state to the effect that the admission of immaterial testimony is not cause for the reversal of a judgment, unless it improperly influences the result. We could cite numerous decisions to this effect, but will merely refer to the following: McCormack v. Crawford (Tex. Civ. App.) 181 S. W. 489; Stein v. Roberts (Tex. Civ. App.) 217 S. W. 170; Muir v. Stevens (Tex Civ. App.) 221 S. W. 1119.

[4] We think the testimony in question was clearly immaterial. The Court of Civil Appeals, in discussing this evidence, says that—

It "appears to be the only evidence in the record of the contents of the lease made by W. L. Thornton to F. W. Townsend."

We cannot agree, at all, with this statement. The record contains the assignment

executed by Townsend himself, which was introduced in evidence without objection from any one. This assignment is a statement in writing from Townsend himself, and this instrument goes very much more into detail in describing the contents of the recorded lease than does the oral testimony of Day, now under discussion. That being true, the testimony of Day was merely repetition and surplusage. It was immaterial and could not possibly have improperly influenced the result of this case. The testimony of Day certainly added nothing to the references in the assignment to the contents of the lease. For instance, there was but one fact stated by Day, and that was that the lease covered a part of the W. L. Thornton land. That fact was just one of the facts given in the assignment iself.

The assignment, on the other hand, gives numerous facts with reference to the description of the land covered by the recorded lease. For instance: (1) The grantors in the lease; (2) the grantee therein; (3) the date of the lease; (4) the fact that it was duly recorded in the register of deeds in and for Erath county, Tex., where the land itself was situated; (5) that the lease actually covered 110 acres of land. The parol testimony, as far as it went, corresponded to the recitals and references in the assignment, which was in evidence.

The testimony of Day being in evidence, without objection, in the assignment itself, the admission of the former was harmless. In this very connection, we quote as follows from the case of McCormack v. Crawford, supra:

"One Hunnicutt, Chief Draftsman in the General Land Office, was permitted, over the objection of appellant, to testify with reference to what appeared from the original field notes of the various surveys composing blocks C–3, J–K, J–K 2 and S–1. The maps and field notes themselves having been introduced in evidence and the facts testified to by this witness appearing from an examination of them, the error, if any, in the admission of his deposition, is harmless."

The Court of Civil Appeals, in the case at bar, quite correctly concluded, in its first opinion, that the description of the land in the assignment executed by Townsend, and in evidence, was sufficient. In so holding, it said:

"The reference to a certain oil and gas lease made by W. L. Thornton and wife to F. W. Townsend on February 14, 1918, and the statement that said lease was recorded in the deed records of Erath country, sufficiently describe the land intended to be conveyed by the instrument executed by F. W. Townsend, and a portion of which is set out above, if by reference to the deed records of Erath county and the lease by Thornton and wife to Townsend the correct description of the property intended to be conveyed by Townsend to Day could be secured. In construing deeds, resort must be had to the general rule that that is certain which may be made certain. Vineyard v. O'Connor, 90 Tex. 59, 36 S. W. 424; Gresham v. Chambers, 80 Tex. 544, 16 S. W. 326; Bowles v. Beal, 60 Tex. 322; Land & Cattle Co. v. Chisholm, 71 Tex. 523, 9 S. W. 479."

Since the assignment from Townsend to Day refers to the deed records for a more particular description of the property, and since that is a sufficient description of property, then the admission of the evidence complained of was wholly immaterial, could not have influenced the result, was harmless, and should not have caused a reversal of the judgment.

But for the failure of the assignment to actually describe the land involved by metes and bounds, it would be difficult for any assignment to more accurately describe the property involved than does the one in the case at bar. Before the reference to the recorded lease, with the assignment as a guide, could result in any possible error, it would have been necessary for Thornton and his wife, on the same day, to have leased to Townsend two tracts of land in Erath county, each containing 110 acres. Such probabilities are exceedingly remote. At any rate, Day was willing to take his chances on the sufficiency of the description.

We think the portion of the trial court's judgment awarding Day and Cullinan possession of the assignment, and divesting out of Townsend, Bishop, and Higginbotham all interest in the lease therein described, is all that plaintiffs in error needed. In other words, that the Court of Civil Appeals correctly ruled that the assignment in question was a present conveyance of the property. If the assignment executed by Townsend is valid, as properly describing the land, independently of the oral testimony of Day, as we think it was, then the testimony of Day could not, in any event, have influenced the result, and was therefore harmless.

We might say, in passing, that various witnesses for the defense, in the trial court, testified about this Thornton lease as fully as did Day. In fact, Bishop himself testified that he had a conversation with Day with reference to the Thornton lease involved in this suit; that he told him he had 110 acres; that he showed it to him on the map. This testimony bears a striking resemblance to that of Day, for which the case was reversed. In fact, it went much more into detail than did Day. Frankly, we entertain grave doubt as to whether or not Bishop and his associates should be heard to complain of the admission of Day's evidence, when they themselves introduced the same and more evidence. This is, at least, another reason why Day's testimony became immaterial. Evidence offered by both sides definitely estab-

lished the fact that the lease in suit was the Thornton lease. When the evidence was closed, there was no issue left upon, that point, and Day's testimony could not have influenced the result.

The Supreme Court itself, in referring to the 'final opinion of the Court of Civil Appeals, and in granting the writ of error herein, made a notation which is worthy of much praise for its brevity and clearness. We are in complete accord with its views relative to the testimony now under discussion. In what we have said we have only endeavored to apply those views in a clear and logical way to the very facts of the case.

In closing this discussion, we feel we can do no better than quote the Supreme Court's aforesaid notation as follows:

"We regard the decision as in conflict with the rule of decision that the admission of immaterial testimony is not cause for the reversal of a judgment unless it improperly influences the result. We think the testimony here was immaterial in view of the reference in the assignment to the description as given in the recorded lease, which last description was a sufficient one, and corresponded to that which was the subject of the parol testimony for whose admission the judgment was reversed."

We have carefully considered all questions before us, in the light of the entire record, and we can see no reason why the judgment of the district court should not be affirmed.

Therefore we recommend that the judgment of the Court of Civil Appeals be reversed and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.